James McMERTY, as Trustee in Bankruptcy, on behalf of and for the bankrupt, Advanced Plastics, Inc. a/k/a Postal Centers, Inc. a/k/a Zip-Go, Inc., et al., Plaintiffs,

v.

Richard K. BURTNESS et al., Defendants.

No. Civ–6–76–55.

United States District Court, D. Minnesota, Sixth Division.

Oct. 22, 1976.

James D. Cahill, Garrity, Cahill, Gunhus, Streed, Grinnell & Jeffries, Moorhead, Minn., and Roger H. Frommelt, Frommelt & Eide, Minneapolis, Minn., for plaintiffs.

Randolph E. Stefanson, Stefanson, Landberg, Alm & Pitsenbarger, Moorhead, Minn., and Thomas C. Wold, Pancratz, Wold & Johnson, Fargo, N. D., for defendant Richard K. Burtness.

Alden H. Gjevre, Thysell, Gjevre & McLarnan, Moorhead, Minn., and Kermit E. Bye, Vogel, Vogel, Brantner & Kelly, Fargo, N. D., for defendant Edward O. Samuelson.

Donald A. Wirries, Moorhead, Minn., and Wayne O. Solberg, Solberg, Stewart & Boulger, Fargo, N. D., for defendants James Smykowski, Leonard Wulf, O. Lloyd Friton, Harold N. Luthi, and Richard Schmidgall.

Robert L. Stroup, Nilles, Hansen, Selbo, Magill & Davies, Fargo, N. D., and William D. Yuill, Kruger, Yuill & Feder, Fargo, N. D., for defendant Kenneth Ulland.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

The principal issue raised by plaintiffs' motion to maintain this action as a class action pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure is whether the claims of the class present common issues of law and fact which predominate over individual issues as is required by Rule 23(b)(3). The named plaintiffs are individual purchasers and the representative of a group of purchasers who bought self-service postal units from Zip-Go, Inc., a wholly owned subsidiary of Advanced Plastics, Inc. Defendants were officers or directors of the two corporations during the relevant period. The proposed class is all persons who sustained losses from purchases of postal units made during the period of March 12, 1971 through December 31, 1973. On August 27, 1976, the court denied defendants' motions to dismiss and to change venue. In denying the motion to dismiss, the court recognized that James McMerty, the trustee in bankruptcy of the two corporations, had standing to bring this action as the representative of twenty-six purchasers of postal units who have filed claims against the bankrupt estate.

Plaintiffs have alleged numerous causes of action. The great majority of these are premised on the as yet unchallenged contention that the postal units as sold and operated constituted securities within the meaning of the Securities Act of 1933, the Securities and Exchange Act of 1934, and the securities acts of various states. There are two types of securities claims—nonregistration claims under the Securities Act

of 1933 and the state acts and antifraud claims under both of the federal statutes and the state acts. Plaintiffs also allege common law fraud and breach of contract. Jurisdiction over the federal claims is derived from section 27 of the Securities Act, 15 U.S.C. § 78aa. The state claims are cognizable as within the pendent jurisdiction of the federal courts.

■ The propriety of class action status regarding plaintiffs' claim under section 12(1) of the Securities Act of 1933, 15 U.S.C. § 77l(1), need not be considered at this juncture. The theory of this claim is that since no registration statement was ever filed with the Securities and Exchange Commission, the sale of the machines constituted an unlawful sale of unregistered securities. Section 13 of the Securities Act, 15 U.S.C. § 77m, provides that all actions to enforce liabilities created by section 12(1) shall be brought within one year after the violation upon which it is based. It has been repeatedly held that this statute of limitations is unlike a normal limitation period in that it forms an essential ingredient of the right created by section 12(1) and is not merely an affirmative defense which may or may not be raised by defendants. *Ingenito v. Bermec Corp.,* 376 F.Supp. 1154 (S.D.N.Y.1974); *In re Caesars Palace Securities Litigation,* 360 F.Supp. 366 (S.D.N.Y. 1973); *Straley v. Universal Uranium and Milling Corp.,* 182 F.Supp. 940 (S.D.Cal. 1960), *vacated on other grounds,* 289 F.2d 370 (9th Cir. 1961); and *Premier Industries, Inc. v. Delaware Valley Financial Corp.,* 185 F.Supp. 694 (E.D.Pa.1960).

The cited cases also hold that since compliance with the statute of limitations is a substantive rather than procedural matter, a plaintiff must affirmatively plead facts indicating that the action has been timely brought. Present plaintiffs have seemingly recognized this requirement with regard to their section 12(2) antifraud claim by alleging in paragraph 39 of their complaint that they were unaware of defendants' allegedly fraudulent statements and omissions until some time after March 1, 1973. No similar allegation was made regarding the section 12(1) nonregistration claim. The section 12(2) allegation cannot be transposed onto the section 12(1) claim since the length of the limitation and the time of commencement are different for each section. In such a case, where plaintiffs have failed to affirmatively allege compliance with the statute, the proper procedure is to dismiss the associated claim without prejudice to the plaintiffs' right to file a proper amended complaint within twenty days of the dismissal, *Ingenito v. Bermec Corp., supra.* Therefore, the court dismisses without prejudice plaintiffs' claim under section 12(1) of the Securities Act as set forth in paragraphs 31–35 of the complaint.

■ The best perspective on the advisability of a class action in this instance is gleaned from a general review of the facts. As securities class actions go, this action involves a relatively small class, numbering seventy-nine members. *See Jenson v. Continental Financial Corp.,* 404 F.Supp. 806 (D.Minn.1975) (several hundred members) and *Vernon J. Rockler & Co. v. Graphic Enterprises, Inc.,* 52 F.R.D. 335 (D.Minn. 1971) (at least 305 members). Although prospective class members are located in at least seven states, the vast majority reside in North Dakota, South Dakota, and Minnesota. Most importantly, since the price of each postal unit was in excess of $4,000, each purchaser has a substantial monetary interest. Therefore, a denial of plaintiffs' motion to maintain will not functionally adjudicate the claims of non-appearing purchasers. This case does not present the situation in which the small magnitude of each claim relative to the high cost of individual litigation makes a class action the only effective mechanism for seeking redress. Although it is open to dispute whether these factors, standing alone, would defeat a class action on the ground that joinder is practicable, impracticability of joinder being required by Rule 23(a) of the Federal Rules of Civil Procedure, the court feels that these factors counsel tipping the scales in favor of denying the class action where a close question is presented with regard to satisfaction of the other Rule 23 requirements.

In addition to their federal nonregistration claims dealt with above, plaintiffs have apparently made nonregistration claims under at least seven state securities acts. The word "apparently" is used since except for the allegations concerning the Minnesota and South Dakota securities acts, plaintiffs have merely made the conclusory allegation that defendants violated the securities statutes of a particular state, giving the citation to the statute. They have not specified the substance of each statute. Thus, the court cannot determine from the complaint if the statutes parallel the federal, Minnesota, and South Dakota statutes in regulating both registration and fraud. However, the court need not explore this issue further since it deems the key issue at this point to be whether or not the postal units were securities, an issue by definition common to all of the state statutes.

■ The initial determination which will have to be made regarding the state nonregistration claims is whether the postal units were securities. Since seven state statutes are involved, seven different definitions potentially could exist. Thus, it appears that the state non-registration claims present varying questions of law, not common to the class as a whole. Although the facts involved in the definitional question may be the same, the outlines of the legal definition are potentially different. Plaintiffs have made no argument which tends to rebut this conclusion of potential divergence. Since this legal definition is the initial, crucial issue regarding all claims, the court feels that this individual legal issue predominates over the common issues of fact and makes the state non-registration claims inappropriate for class treatment. The court's conclusion regarding the class action status of pendent common law fraud claims in *In Re U. S. Financial Securities Litigation,* 64 F.R.D. 443, 455 (S.D.Cal.1974) is relevant to this point:

> The common law fraud claims brought under pendent jurisdiction are also inappropriate because individual questions of law would predominate if it were necessary to canvass the law of every state in which a purchase of debentures was made.

The various fraud-based claims are founded on section 12(2) of the Securities Act of 1933, U.S.C. § 77*l*(2); section 17(a) of the Securities Act, 15 U.S.C. § 77q; section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and rule 10b–5 promulgated thereunder; the antifraud sections of various state securities acts; and common law fraud. Plaintiffs allege that fraud was perpetrated by means of written misrepresentations, oral misrepresentations, omissions of material facts, and a fraudulent course of business. The issue of predominance of common questions of fact over individual questions is dealt with in paragraph 27 of the affidavit of plaintiffs' counsel in support of the motion to maintain.

> The questions of law and fact common to the class predominate over any questions affecting only individual members. The sales pursuant to a common scheme to distribute securities without registration, in violation of federal law, if proven, would entitle every purchaser to rescind or to receive damages. The fraudulent misrepresentations of a postal unit as a secure and profitable investment constitutes a common course of conduct involving all of the purchasers. Finally, the omissions of material fact are also common to all purchasers. Of course, there are always variations in representations involving many people, however, these are likely to be minimal and in any event are not substantial so as to preclude the maintenance of this class action.

Five common questions are outlined in this excerpt. The nonregistration question has been discussed and is irrelevant to the antifraud claims. The allegation that a common question exists inasmuch as the fraudulent misrepresentations constituted a common course of conduct is so broad as to be insubstantial. The important issue is the common quality of the specific forms of misrepresentations. It merely begs the question to say that all of the misrepresentations, taken together, formed a fraudu-

lent course of conduct. Therefore, the last three alleged common questions are the important ones. These three potential common issues deal with the omissions and the misrepresentations, written and oral.

Although the omissions may have varied from purchaser to purchaser since some may have been told more than others, it is usually held that fraud claims based on failures to disclose material facts to purchasers are necessarily common to the class. *Vernon J. Rockler & Co. v. Graphic Enterprises, Inc., supra.* Counsel for plaintiffs have enumerated nine allegedly material facts which were not communicated to purchasers [affidavit of James D. Cahill, paragraph 24(E)]. Defendants have not contravened the sworn statement of plaintiffs' counsel that these facts were material and uncommunicated to all purchasers. Therefore, the court is satisfied at this stage of the litigation that the issue of omissions is common to all members of the proposed class.

■ The sole alleged written misrepresentation, an advertisement which is deemed a prospectus by plaintiffs, is alleged to have been sent to all purchasers. Again, defendants have not contravened this claim. They argue only that there is no proof that the advertisement was utilized or relied upon. Of course, plaintiffs need not *prove* reliance at this stage of the litigation since an inquiry into the merits is improper at this juncture. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). However, defendants' argument is well taken since proof of actual individual reliance, an essential element of an action based on affirmative misrepresentations, would present individual questions of fact at trial. *Titan Group, Inc. v. Faggen,* 513 F.2d 234 (2nd Cir. 1975); *Chelsea Associates v. Rapanos,* 527 F.2d 1266 (6th Cir. 1975); and *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374 (2nd Cir. 1974). Therefore, the court feels that the written misrepresentation issue presents individual questions of fact. The fact that many courts have certified class actions in this situation, severing the reliance issue for

subsequent individual trial, is not relevant to the issue of commonality. It is only relevant to the issues of predominance of common over individual questions and superiority of a class action.

■ The oral misrepresentation issue is the most substantial bar to a class action on the fraud-based claims. It appears that the sales procedure in this case encompassed face-to-face meetings between the agents of the seller and the prospective purchasers. As noted above, one advertisement was mailed, but the primary impetus for a sale was the personal confrontation. It is significant that plaintiffs have remained virtually silent on this point. Defendants stated at oral argument that the postal units were primarily sold through personal meetings. Plaintiffs rest on their unsupported assertion that the oral misrepresentations were "similar" and on the claim that they will discover the substance of the oral statements and the variation or lack thereof between them when the class members are interviewed. At this stage, plaintiffs have not satisfied the court that the claim of similarity has any factual support. Rather, it appears that since purchasers were individually solicited, the substance and materiality of the misrepresentations made to them will have to be proved individually. Therefore, the court will follow the well-established line of cases which holds that actions based on oral misrepresentations do not present common issues of fact. *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 482 F.2d 880 (5th Cir. 1973); *Miller v. Central Chinchilla Group, Inc.,* 66 F.R.D. 411 (S.D.Iowa 1975); *Ingenito v. Bermec Corp., supra.*

■ Thus it appears that the three issues relevant to the class status of the antifraud claims are common and individual. The omission question is common, the oral misrepresentation question is clearly individual, and the written misrepresentation question is individual, but not as clearly so. In light of the practical, overall considerations outlined previously, the primarily oral, personalized sales procedure involved, and the greater number of individual issues present-

ed, the court feels that the individual issues predominate over the common issues, thereby making a class action regarding the fraud-based claims improper.

■ Plaintiffs' last cause of action is based on breach of contract. As was the case with plaintiffs' non-registration claims under various state securities statutes, this claim presents issues of law which will vary from class member to class member, depending upon which state's common law of contracts governs. An added degree of complexity is presented regarding the contract claim since the appropriate contract law will vary according to which state's choice of law principles apply. In addition, this question of the appropriate law turns on the facts surrounding the formation of each contract. Therefore, individual issues are primarily presented and predominate.

THEREFORE, IT IS ORDERED:

(1) Plaintiffs' claim under section 12(1) of the Securities Act as set forth in paragraphs 31–35 of the complaint is dismissed without prejudice to plaintiffs' right to file an amended complaint within twenty days of this order affirmatively pleading compliance with the statute of limitations.

(2) Plaintiffs' motion to maintain a class action with regard to all other claims is denied.