David A. and Betty L. HAGERT, et al., Plaintiffs,

v.

GLICKMAN, LURIE, EIGER & CO.; Lurie, Eiger, Besikoff & Co.; Offerman & Co., Inc., Robert H. Ersek, M.D., Jerald H. Maxwell; Larry A. Rasmusson, A. Nicol Smith, Arvid B. Evensold; Fryberger, Buchanan, Smith, Sanford & Frederick, P.A., and John Doe, representing unknown defendants, Defendants.

Civ. No. 3–81–259.

United States District Court,
D. Minnesota,
Third Division.

Aug. 26, 1981.

Joseph T. Dixon, Jr., and Bruce C. Recher, Henson & Efron, P.A., Minneapolis, Minn., for plaintiffs.

W. Scott Herzog and Thomas J. Shroyer, Barnett, Ratelle, Hennessy, Vander Vort, Stasel & Herzog, Minneapolis, Minn., for defendants Glickman, Lurie, Eiger & Co. and Lurie, Eiger, Besikoff & Co.

Laurance R. Waldoch and Thomas E. Glennon, Lindquist & Vennum, Minneapolis, Minn., for defendant Offerman & Co., Inc.

Stephen H. Cohen and John B. Massopust, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for defendants A. Nicol Smith and Fryberger, Buchanan, Smith, Sanford and Frederick, P.A.

Mark C. Peterson, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., for defendant Robert A. Ersek.

## MEMORANDUM AND ORDER

DEVITT, Senior District Judge.

This case is brought by approximately 235 plaintiffs against various defendants alleging violations of both federal and state securities laws and common law fraud and negligence. Before the court are plaintiffs' motion for partial summary judgment on the issue of compliance with the applicable statute of limitations with regard to Sections 11 and 12 of the 1933 Securities Act, 15 U.S.C. §§ 77k, 77*l*, and defendants Glickman, Lurie, Eiger & Co., Lurie, Eiger, Besikoff & Co., A. Nicol Smith, and Fryberger, Buchanan, Smith, Sanford & Frederick, P.A.'s motions to dismiss on various grounds.

This action arises out of the purchase by plaintiffs of publicly offered ten percent

subordinated capital notes due 1988 with warrants to purchase common stock of $.01 par value (hereinafter "Med General Notes") issued by Med General, Inc. (hereinafter "Med General") in 1978. The public offering was made pursuant to a registration statement filed April 27, 1978 and a prospectus dated June 14, 1978. Plaintiffs claim that these documents, together with the 1978 annual report of Med General, contained materially false information and omitted to state material facts with regard to Med General's sales and income during 1977 and 1978. Med General has defaulted on the notes, and is presently involved in reorganization proceedings.

Defendants Glickman, Lurie, Eiger & Co.; Lurie, Eiger, Besikoff & Co.[1] (hereinafter "accountants") acted as accountants for Med General and certified its financial condition for 1977 and the first quarter of 1978 in the registration statement and prospectus, and certified the company's financial condition in the 1978 annual report.

Defendant Offerman, Inc. acted as underwriter for the sale of the notes. Defendants Ersek, Maxwell, Rasmusson, and Smith were all officers and directors of Med General at the time the registration statement was filed. Defendant Evensold was a director at the time the registration statement was filed. All directors named as defendants, with the exception of Ersek, are alleged to have signed the registration statement. Defendants Fryberger, Buchanan, Smith, Sanford & Frederick, P.A. (hereinafter "law firm" or "attorneys") acted as legal counsel to Med General during the time period when the alleged wrongdoing occurred. Defendant Smith is a shareholder in the law firm.

Plaintiffs' complaint[2] alleges that all defendants, either as principals, aiders and abettors, or controlling persons violated Section 11 of the 1933 Securities Act, 15 U.S.C. § 77k; that defendant Offerman, Inc., as a seller or aider and abettor, and the remaining defendants as aiders and abettors or controlling persons, violated Section 12(2) of the 1933 Securities Act, 15 U.S.C. § 77*l*(2); that all the defendants engaged in common law fraud; that all defendants as either principals, aiders and abettors or control persons violated *Minn. Stat.* §§ 80A.01, 80A.03, and 80A.17; that all defendants were negligent and acted with willful indifference to plaintiffs' rights; that all defendants, either as principals, aiders and abettors or control persons, violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j and Rule 10b–5, and that all defendants, either as principals, aiders and abettors, or controlling persons violated Section 18 of the Securities Exchange Act of 1934, 15 U.S.C. § 78r.

I. Motion for Partial Summary Judgment and Motions to Dismiss for Failure to Comply with the Statute of Limitations.

Plaintiffs move for partial summary judgment on Counts 1 and 2 of the complaint on the issue of compliance with the statute of limitations applicable to Sections 11 and 12(2) of the 1933 Securities Act. Defendants accountants and lawyers move to dismiss on the grounds that the complaint fails to state a claim upon which relief may be granted in Counts 1, 2, and 8 for failure to affirmatively plead compliance with the statute of limitations applicable to Sections 11 and 12(2) of the 1933 Act and Section 18 of the 1934 Act. In view of our disposition of defendants' motion to dismiss the Section 18 claim on other grounds, we will consider only the timeliness of the Sections 11 and 12(2) claims at this juncture. Defendant Smith and his law firm also assert that it is clear from the record that these counts are time-barred. To that extent the motion will be considered one for summary judgment.

---

1. Lurie, Eiger, Besikoff & Co. is apparently the successor in interest to Glickman, Lurie, Eiger & Co.

2. Plaintiffs filed a First Amended Complaint which differs from the original complaint only in that it added thirty-five additional plaintiffs. Reference in this opinion to the "complaint" is to Plaintiff's First Amended Complaint.

The timeliness of the Section 11 and 12(2) claims are governed by Section 13 of the 1933 Act, 15 U.S.C. § 77m, which provides in relevant part,

> No action shall be maintained to enforce any liability created under section 77k or 77*l*(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . . .

Prior to October, 1979, Med General represented itself as, and was recognized to be, an extremely fast growing company in excellent financial condition. Med General was in the business of manufacturing and distributing medical and surgical products. The company reported to the public that its net sales had doubled for each year from 1974 through 1977, and had substantially increased in 1978 to a high of 8.3 million dollars. In May, 1979, Med General announced record first quarter sales and earnings for 1979.

On October 3, 1979, the *Minneapolis Star*, a local daily newspaper, published an article detailing alleged questionable sales practices engaged in by Med General, that resulted in inflated reported sales. The article enumerated alleged financial problems experienced by Med General, including sustaining earnings levels only through tax breaks, a large amount of debt, and problems with accounts receivable.

On October 4, 1979 the company announced an expected net loss for the third quarter of 1979 of approximately $670,000. This was explained by the company to have resulted from a one time liberalization of its credit policies, and the holding of one million dollars worth of orders it had been unable to ship during the third quarter of 1979.

In late October, 1979, defendants Maxwell and Rasmusson resigned as president and vice president of Med General. They remained directors of the company.

On December 14, 1979, the *Wall Street Journal* reported that Med General was anticipating a substantial fourth quarter loss.

This article also reported that Med General had changed accounting firms, that it was having continuing cash flow problems, that a committee of its creditors had been formed to arrange a moratorium on payment of certain of the company's financial obligations, and that it was trying to sell administrative and factory facilities under construction. The article also stated that the company explained the anticipated loss was due to dealer returns and the activities of a former salesperson.

On September 17, 1979, the bid price for the Med General notes was 85. On October 1, 1979, the bid price was 88; on October 29, 1979, it dropped to 78. The bid price was then 85 on November 15, 1980 and January 15, 1980. On February 4, 1980 the bid price had dropped to 68. By April 1, 1980, it dropped further to 64. Plaintiffs argue that this drop was due to high interest rates, and merely reflects a general trend in bond prices during that period.

Med General was timely in its interest payments on the notes until February 1980. Default on these payments occurred in May, 1980.

Plaintiffs argue that they were not on notice of any fraud in the sale of the notes until May, 1980, when the default on the notes occurred, and the company's 10–K report for fiscal 1979 indicated that the company's losses exceeded its sales for 1979. That 10–K report also restated the company's financial statements for 1978, showing a loss of $246,000 instead of the previously reported net profit of $885,000. Defendants argue that the plaintiffs were on notice of the alleged fraud as a matter of law in October, 1979, when the article in the *Minneapolis Star* appeared, and that plaintiffs did not act with due diligence to discover that fraud.

■■■ Summary judgment is an appropriate vehicle for determining compliance with a statute of limitations, but summary judgment should be denied where there are issues of fact as to when the limitations period begins. *See Buder v. Merrill Lynch, Pierce, Fenner & Smith,* 644 F.2d 690, 692

(8th Cir. 1981). The commencement of the limitations period is to be tested not only by the subjective judgment of the defrauded party, but also by an objective standard of reasonable diligence by the plaintiffs. *Id.*

██ Here conflicting inferences can be drawn from the information available to the plaintiffs regarding the alleged fraud. The forceful arguments advanced by the parties in favor of their respective views of the facts illustrate the differing interpretations to which these facts are susceptible. Accordingly, summary judgment is inappropriate. *See Robertson v. Seidman & Seidman,* 609 F.2d 583 (2d Cir. 1978) (summary judgment denied notwithstanding that plaintiff admitted he believed he had been swindled, price of stock dropped 85 percent, and SEC initiated investigation); *see also Briskin v. Ernst & Ernst,* 589 F.2d 1363 (9th Cir. 1978).

██ The plaintiffs have not, however, pled compliance with Section 13 with the requisite specificity. Plaintiffs allege only that the "action has been brought within one year of the discovery of the untrue statements of material fact or omissions of material fact, and within one year of the time such untrue statements or omissions should have been discovered." *See* First Amended Complaint, ¶ ¶ 22, 32. Because compliance with Section 13 is an essential element of the rights created under Sections 11 and 12(2), compliance is a substantive rather than a procedural matter. *See McMerty v. Burtness,* 72 F.R.D. 450, 453 (D.Minn.1976). Therefore, a plaintiff must affirmatively plead facts indicating the action has been timely brought. *Id.*

Accordingly, Counts 1 and 2 are dismissed without prejudice and plaintiffs are granted leave to amend their complaint to affirmatively plead compliance with Section 13 of the 1933 Securities Act.

II. Motions to Dismiss.

A. Section 18 of the Securities Exchange Act of 1934.

██ Count 8 of plaintiffs' complaint alleges that defendants violated Section 18 of the Securities Exchange Act of 1934 by making, or causing to be made, false or misleading statements filed with the Securities and Exchange Commission. Defendants Smith, the law firm, and accountants move to dismiss this count on several grounds, one of them being that a Section 18 claim is actionable only when the documents relied upon by plaintiffs are filed pursuant to the 1934 Act.

Plaintiffs concede that none of the documents relied upon by the plaintiffs, *i. e.*, the registration statement, the prospectus, and the 1978 annual report were filed pursuant to the 1934 Act. We hold that a claim made under Section 18 of the 1934 Act must be based on reliance on documents filed pursuant to the 1934 Act. *See Gross v. Diversified Mortgage Investors,* 438 F.Supp. 190, 196 (S.D.N.Y.1977). Accordingly, Count 8 of the plaintiffs' complaint is dismissed with prejudice.

B. Aiding & Abetting Claims: Sections 11 and 12(2) of the 1933 Act.

██ Defendant accountants, Smith, and the law firm seek to dismiss the aiding and abetting claim set forth under Section 11 and 12(2) of the 1933 Act.

Section 11 imposes liability for false or misleading registration statements on:

(1) every person who signed the registration statement;

(2) every person who was a director of (or person performing similar junctions) or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;

(3) every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;

(4) every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or

as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him;

(5) every underwriter with respect to such security.

Section 12(2) imposes liability on any person who "offers or sells a security" by means of a false or misleading prospectus or oral communication. This liability runs to "the person purchasing such security from him . . . ."

Plaintiffs make a general allegation that all defendants have violated Sections 11 and 12(2) as either principals, control persons as defined by Section 15 of the 1933 Act, or as aiders and abettors. Defendants Smith, the accountants and the law firm assert that as a matter of law, recovery cannot be had under these provisions on an aiding and abetting theory. We agree.

In support of their claims, plaintiffs cite *In re Caesars Palace Securities Litigation*, 360 F.Supp. 366, 384 (S.D.N.Y.1973), where the court held that aiding and abetting claims under Sections 11 and 12(2) are actionable. That holding was based on the broad, remedial nature of the 1933 Act, the perceived need for a liberal construction of that Act, and the notion that participants who substantially assist wrongdoing should not escape liability. *Id.* at 382–83.

In recent cases, the Supreme Court has made it clear that a determination of the standard of liability under the various provisions of the federal securities laws must begin with and rest primarily on the language of the statutes. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 200–01, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976); *see also Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). In line with this reasoning, we believe the greater and better weight of authority on the issue of aiding and abetting liability under Sec-

tions 11 and 12(2) is that expressed in *In Re Equity Funding Corporation of America Securities Litigation*, 416 F.Supp. 161, 181 (C.D.Cal.1976):

[W]here a statute specifically limits those who may be held liable for the conduct described by the statute, the courts cannot extend liability, under a theory of aiding and abetting, to those who do not fall within the categories of potential defendants described by the statute. To impose such liability would circumvent the express intent of Congress in enacting these statutes that proscribe narrowly defined conduct and allow relief from precisely defined parties.

See also *McFarland v. Memorex Corp.*, 493 F.Supp. 631, 642 (N.D.Cal.1980); *In re Gap Stores Securities Litigation*, 457 F.Supp. 1135, 1143 (N.D.Cal.1978); 3 A. Blomberg, *Securities Fraud & Commodities Fraud* § 8.5(320) (1981).

Section 11 and 12(2) are express liability provisions, as contrasted to Sections 17(a) and the 1933 Act and Section 10(b) of the 1934 Act which define violations or make certain acts unlawful. The concept of aiding and abetting, with its origin in the criminal law, is a more proper adjunct to the violation sections. *Id.*, § 8.5(315) at 206.7; *see also In re Equity Funding Corporation of America Securities Litigation*, 416 F.Supp. at 181. This reasoning applies with equal force to Section 12(2), notwithstanding the expansive view of privity generally taken with regard to that provision. *See generally, Wasson v. Securities Exchange Commission*, 558 F.2d 879 (8th Cir. 1977).

Accordingly, plaintiffs' claims of aiding and abetting in Counts 1 and 2 of the complaint are dismissed with prejudice.

C. Primary Liability of Law firm under Section 11.

The law firm seeks to dismiss Count I of the complaint as to it on the ground that it cannot be held liable as a primary violator of Section 11, as it is not among the enumerated classes subject to liability found in that provision. The only allega-

tion in the complaint specifically directed at the law firm states, "Defendant Fryberger, Buchanan, Smith, Sanford & Frederick, P.A., acted as attorneys for Med General, Inc. during the relevant time period, and had knowledge of and assisted others in the wrongdoing described herein." First Amended Complaint ¶ 14. There is no allegation that this defendant signed or expertised any portion of the registration statement. Absent such an allegation, a claim of a primary violation of Section 11 cannot be made out against this defendant. *See Escott v. Barchris Construction Corporation*, 283 F.Supp. 643, 683 (S.D.N.Y.1968). Insofar as Count 1 alleges a primary violation against the law firm it is dismissed without prejudice with leave to amend.[3]

### D. Control Person Liability.

■ Plaintiffs have generally alleged that all defendants were control persons under Section 15 of the 1933 Act and thus liable for violations of Sections 11 and 12(2). Defendants Smith and the law firm seek dismissal of this claim for failure to state a claim.

Section 15 provides for secondary liability for "[e]very person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under Sections 77k or 77*l* . . ." 15 U.S.C. § 77*o*.

Counts 1 and 2 of the complaint alternatively allege that all defendants are liable for violations of Sections 11 and 12(2) of the 1933 Act as principals, control persons, or aiders and abettors. It does not specify over whom various defendants have control. These allegations are insufficient to enable defendants to answer the complaint.

■ While we agree that plaintiffs need not plead specific affirmative acts showing actual control of a particular defendant over an alleged principal violator, *see Stern*

*v. American Bankshares Corp.*, 429 F.Supp. 818, 824 (E.D.Wis.1977), it is necessary that, at the least, defendants be informed whether they are alleged to be primary or secondary violators, as to which primary violator they are allegedly controlling persons, and whether they are controlling persons as a result of status or affirmative acts. *See Kennedy v. Nicastro*, 503 F.Supp. 1116, 1121–22 (N.D.Ill.1980); *McFarland v. Memorex Corp.*, 493 F.Supp. at 649, 656; *Harriman v. E. I. Dupont de Nemours and Company*, 372 F.Supp. 101, 105 (D.Del.1974).

Accordingly, Counts 1 and 2 of the complaint must be dismissed without prejudice with leave to amend insofar as they allege a secondary violation under Section 15 of the 1933 Act against the law firm and Smith.

### E. Liability as Seller under Section 12(2).

Count 2 of the complaint alleges, *inter alia*, that "the conduct of defendants was an integral part of and a substantial factor in effecting the sales of the 10% notes, and defendants therefore amount to sellers of the 10% notes."

■ Defendants Smith, the law firm, and accountants argue that, absent direct privity between the defendants and the purchasers, there can be no Section 12(2) liability. The Eighth Circuit Court of Appeals has taken a rather broad view of the concept of privity in defining "seller" within the meaning of Section 12(2). Contact between a purported seller and the ultimate purchaser of a security is not required in order to be found to be a seller under Section 12(2). *Wasson v. Securities and Exchange Commission*, 558 F.2d 879, 886 (8th Cir. 1977). Rather, the determination of when one who is not in direct privity with a purchaser can be deemed a seller under Section 12(2) turns on "whether the defendant was uniquely positioned to ask relevant questions, acquire material information, or disclose his findings . . ." with regard to a sale. Thus, a defendant's position in relation to a transaction comprising a sale must be more than remote or inciden-

---

**3.** Leave to amend is granted on the chance that plaintiffs may be able to sufficiently allege that

the law firm expertised a portion of the registration statement.

tal, and the more extensive the involvement or control of a defendant over a sale, the more likely he is to be considered a seller. *See id.*

■ As stated above, the defendants have a right to be informed whether they are being charged as principals or as control persons in Count 2. To the extent that a particular defendant is being charged as a principal, he or it is entitled to be generally appraised of what kind of "conduct" was engaged in that was "an integral part of and a substantial factor in effecting the sales."

Accordingly, insofar as Count 2 charges these defendants with being sellers and thus primary violators of Section 12(2) it is dismissed without prejudice with leave to amend.

F. Section 10(b) and Rule 10b–5 claims; Common Law Fraud claim.

■ Defendants Smith, the law firm, and accountants seek to dismiss Count 7 of the complaint, which purports to set forth a claim for violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5, promulgated thereunder. The accountants also move to dismiss the common law fraud count set forth in Count 3. The ground for this motion is failure to sufficiently plead fraud as required by Fed.R.Civ.P. 9(b).[4] The allegedly fraudulent misstatements and omissions in the prospectus, registration statement and 1978 annual report are fairly comprehensively described in the complaint. We hold that plaintiffs have adequately set forth the "time, place and circumstances of the alleged fraudulent activities." *See Helfant v. Louisiana & Southern Life Ins. Co.,* 82 F.R.D. 53, 57 (E.D.N.Y.1979).

Plaintiffs have, however, failed to sufficiently plead the fraud allegedly resulting from oral representations made by the defendants. Plaintiffs make only vague allegations with respect to oral communications between plaintiffs and defendants. With respect to the Section 12(2) claim, incorporated by reference in the Section 10b–5 claim, plaintiffs allege, "That oral communications in connection with the offering of the 10% notes made by the various defendants contained untrue statements of material fact and omissions to state material facts as outlined . . . ." This paragraph then refers back to the portion of the complaint describing the fraud perpetrated by the registration statement, the prospectus, and the 1978 annual report. Plaintiffs have not sufficiently alleged fraud by means of oral representations. Plaintiffs must detail the content of oral communications, the defendant who made said communications, the time they were made, and in what manner they were fraudulent.

■ With respect to both written and oral misrepresentations, plaintiffs must inform the defendants whether they are charged with primary or secondary liability, and what role each defendant played in the alleged fraud. *See Savino v. E. F. Hutton & Co., Inc.,* 507 F.Supp. 1225, 1231–32 (S.D.N.Y.1981); *Goldberg v. Meridor,* 81 F.R.D. 105, 110–11 (S.D.N.Y.1979); *see also Kennedy v. Nicastro,* 503 F.Supp. at 1122. With regard to defendant accountants, we agree that plaintiffs must do more than allege that the accountants prepared or certified financial statements containing false or misleading statements. Plaintiffs must set forth allegations that detail the wrongdoing of the defendant accountants; in other words, plaintiffs must allege facts which specify how the accountants failed to properly execute their responsibilities. *See Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1089 (S.D.N.Y.1977).

■ It is not necessary, however, that plaintiffs be required to plead the exact dates of their respective purchases of these securities. Allowing this information to be gathered through the discovery process will not prejudice the defendants' ability to answer the allegations against them. *See Gil-*

---

4. Fed.R.Civ.P. 9(b) provides, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

*bert v. Bagley*, 492 F.Supp. 714, 726 (M.D.N.C.1980); *Dupont v. Wyly*, 61 F.R.D. 615, 632 (D.Del.1973).

Moreover, to the extent that plaintiffs, when repleading Count 7, allege that any defendant has aided and abetted a violation of Section 10(b), that pleading must conform with the requirement of Rule 9(b). *See e. g., Stern v. American Bankshares*, 429 F.Supp. 818 (E.D.Wis.1977). Plaintiffs must allege with particularity the circumstances that comprise the elements of aiding and abetting. *See Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972).

We summarily reject defendants' contentions that plaintiffs have failed to adequately allege reliance and the use of interstate commerce. Moreover, plaintiffs have adequately plead the requisite scienter.

Accordingly, we hold that plaintiffs' 10(b) and 10b–5 and common law fraud claims against these defendants are dismissed without prejudice with leave to amend in accordance with the principles set forth herein.

G. State Law Claims.

■■■ Defendant accountants move to dismiss Count 4 of the complaint, alleging violations of Minnesota's Blue Sky Law, *Minn.Stat.* § 80A.01 *et seq.* Plaintiffs allege violations of *Minn.Stat.* §§ 80A.01, 80A.03, and 80A.17.

Civil liabilities for violation of the provisions of the Minnesota Blue Sky Law are found in *Minn.Stat.* § 80A.23. Subdivision 11 of that provision limits the remedies of an aggrieved purchaser: "The rights and remedies promulgated by sections 80A.01 to 80A.31 are in addition to any other right or remedy that may exist at law or in equity, but sections 80A.01 to 80A.31 do not create any cause of action not specified in this section . . ."

Subdivision 2 of section 80A.23 provides, in relevant part, for liability to a purchaser for any person selling a security in violation of section 80A.01.[5] It also provides that "any person who violates section 80A.03 in connection with the purchase or sale of any security shall be liable to any person damaged by the conduct prescribed by section 80A.03."[6]

80A.23 subd. 3 provides for secondary liability for violations covered in Minn.Stat. § 80A.23 subd. 2:

Every person who directly or indirectly controls a person liable under subdivision 1 or 2, every partner, principal executive officer or director of such person, every person occupying a similar status or performing a similar function, every employee of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person. There is contribution as in cases of contract among the several persons so liable.

We agree that plaintiffs' claim premised on *Minn.Stat.* § 80A.17, which prohibits misleading filings, cannot be maintained, as there is no cause of action based on this section allowed by *Minn.Stat.* § 80A.23. That claim is dismissed with prejudice.

Plaintiffs, as with the rest of their complaint, have made a general allegation that all defendants are alternatively liable as principals, controlling persons, and/or aiders and abettors. Plaintiffs have incorpo-

---

**5.** *Minn.Stat.* § 80A.01 provides:

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly, or indirectly:
(a) to employ any device, scheme, or artifice to defraud;
(b) to make any untrue statement of a material fact or to omit to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

**6.** Minn.Stat. § 80A.03 provides in relevant part, "It is unlawful for any person to effect any transaction in, or to induce the purchase or sale of any security by means of any manipulative, deceptive or other fraudulent device or contrivance, including any fictitious quotation."

rated by reference a large portion of their complaint pertaining to their federal claims in setting forth Count 4. Because the re-pleading of portions of plaintiffs' complaint will undoubtedly elucidate plaintiffs' state claims with regard to the various defendants, we will deny for the *nonce* defendants' motion to dismiss with regard to these provisions.

*Conclusion*

In summary, we hold that plaintiffs' and defendants' cross motions for partial summary judgment on Counts 1 and 2 of the complaint are denied; the defendants' motions to dismiss are granted in the following respects:

1) That plaintiffs' claims of aiding and abetting violations found in Counts 1 and 2 of the complaint are dismissed with prejudice;

2) That the balance of Counts 1 and 2 are dismissed without prejudice with leave to amend within twenty (20) days in accordance with the principals set forth herein;

3) That Count 8 of the complaint is dismissed with prejudice;

4) That Counts 3 and 7 of the complaint are dismissed without prejudice with leave to amend within twenty (20) days in accordance with the principles set forth herein;

5) That plaintiffs' claim of a violation of *Minn.Stat.* § 80A.17 is dismissed with prejudice.

Defendants' motions are in all other respects denied.