In re FLIGHT TRANSPORTATION CORPORATION SECURITIES LITIGATION.

**Frank P. ANTINORE, et al.**

v.

**REAVIS & McGRATH, A Partnership.**

**Master Docket No. 4–82–874.
Civ. A. No. 4–83–435.**

United States District Court,
D. Minnesota,
Fourth Division.

July 5, 1984.
Amended Order July 25, 1984.

---

See also, 8th Cir., 730 F.2d 1128.

Lowell E. Sachnoff, Chicago, Ill., for plaintiffs.

Jerold S. Solovy, Joan M. Hall, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.[1]

This action arises from the Flight Transportation Corporation ("FTC") Securities Litigation pending before this court under Master Docket No. 4–82–874. In a lengthy and detailed complaint, plaintiffs, purporting to be representatives of a class of all persons who purchased FTC securities during the period from November 30, 1979 to June 18, 1982,[2] bring this action against defendant Reavis & McGrath ("Reavis") which is a partnership of attorneys organized and existing under the laws of the State of New York. Reavis acted as counsel to certain underwriters for March 1981 and June 1982 public offerings of FTC securities. Plaintiffs allege that there were material misrepresentations, material omissions and materially false and misleading information regarding the revenues, businesses, operations and financial condition of FTC in the 1981 and 1982 Prospectuses. They assert that Reavis assisted in the preparation of those Prospectuses and failed to exercise its duty of conducting a "due diligence" investigation of the information contained in each Prospectus. They

---

1. Judge Weiner, a district court judge in the Eastern District of Pennsylvania, is sitting by designation.

2. There are five purported subclasses. Subclass I consists of persons who purchased, directly or in the aftermarket, common stock of FTC issued pursuant to a registration statement declared effective by the SEC on November 30, 1979; subclass II consists of persons who purchased, directly or in the aftermarket, common stock and/or warrants to purchase common stock of FTC offered as units of securities of FTC, each unit consisting of one share of common stock of FTC and one half of a warrant to purchase one share of common stock of FTC, issued pursuant to a registration statement declared effective by the SEC on March 2, 1981; subclass III contains

persons who purchased, directly or in the after-market, common stock of FTC issued pursuant to a registration statement declared effective on June 3, 1982; subclass IV consists of persons who purchased, directly or in the after-market, debentures and/or warrants to purchase common stock of FTC offered as units of securities of FTC, each unit consisting of a $1,000 principal amount 11¼% Sinking Fund Debenture due June 1, 1995, and warrants to purchase 57 shares of FTC common stock, issued pursuant to a registration statement declared effective by the SEC on June 4, 1982; subclass V consists of persons who purchased FTC securities but who are not included in any of Subclasses I, II, III or IV. (Complaint, ¶ 17.) They all claim to have suffered a loss from their purchases.

further contend that Reavis aided and abetted the underwriters in that it knew of or recklessly disregarded facts concerning the underwriters' alleged violation of securities law. The plaintiffs allege that Reavis knew of or recklessly disregarded facts of a fraudulent scheme and failed to disclose those facts in the Prospectuses signed by it. The particular facts are set forth in the complaint.

The plaintiffs contend that these allegedly unlawful acts of Reavis arise to violations of federal and state law under the following five counts: Count I alleges a claim pursuant to Section 11 of the Securities Act in connection with the March 2, 1981 Registration Statement and Prospectus; Count II alleges a claim pursuant to Section 11 of the Securities Act in connection with the June 3 and 4, 1982 Registration Statements and Prospectuses; Count III asserts an action pursuant to Section 10(b) of the Exchange Act for false and misleading disseminations; Count IV asserts common law fraud and reckless misrepresentations; and Count V is brought pursuant to two sections of the Minnesota securities laws.

Presently before the court is the defendant's motion to dismiss the entire complaint. It contends that Counts I and II should be dismissed because plaintiffs cannot state a claim against Reavis under Section 11. It contends Count III should be dismissed because plaintiffs fail to state a claim under Section 10(b) pursuant to either primary or secondary liability. Reavis further contends that plaintiffs' common law fraud claim fails to allege the essential elements of fraudulent conduct, duty and reliance. The defendant asserts that the Minnesota blue sky law is equivalent to Sections 9 and 10(b) of the Securities Act and that plaintiffs have failed to allege certain essential elements. Finally, defendant argues that Counts III, IV and V must be dismissed for failure to state with particularity the circumstances constituting Reavis' purported fraud.

The standard governing a motion to dismiss has been stated by the Supreme Court as follows: "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in supports of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). For the purposes of motion, the well-pleaded material allegations of the complaint are taken as admitted. 2A Moore's Federal Practice ¶ 12.08 (1983).

## SECTION 11 OF THE 1933 ACT

Section 11 of the Securities Act of 1933 sets out the following persons who may be liable where a registration statement contains an untrue statement of material fact or omits to state a material fact:

(1) every person who signed the registration statement;

(2) every person who was a director of (or person performing similar functions) or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;

(3) every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;

(4) every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, report, or valuation, which purports to have been prepared or certified by him;

(5) every underwriter with respect to such security. 15 U.S.C. § 77K(a).

The defendant contends that when lawyers act as counsel to the underwriters they do not come within these categories. The court must agree that liability under Section 11 is not presented by the plaintiffs' complaint.

The plaintiffs attempt to assert both primary and secondary liability under Section 11. Although not averred in the complaint as such, plaintiffs purportedly assert primary liability under Section 11 by contending that plaintiff was either a "control person" or an expert named as such in the Prospectus. It is apparent that the plaintiffs have argued that the defendant acted as an expert because of *dicta* in a recent Supreme Court case which states in a footnote that:

> [C]ertain individuals who play a part in preparing the registration statement generally cannot be reached by a Section 11 action. These include … lawyers not acting as "experts".… *Herman & MacLean v. Huddleston,* 459 U.S. 375, 103 S.Ct. 683, 690, n. 22 [74 L.Ed.2d 548] (1983).

Whether an attorney is an expert by assisting underwriters in the preparation of a registration statement has been reviewed in few cases. In the case specifically addressing the issue, *Escott v. Barchris Construction Corp.,* 283 F.Supp. 643, 683 (S.D. N.Y.1968), the court stated that, with regard to lawyers' liability, "[n]either the lawyer for the company nor the lawyer for the underwriters is an expert within the meaning of Section 11." The court stated that "[t]o state that the entire registration statement is expertised because some lawyer prepared it would be an unreasonable construction of the statute." *Id.*

The plaintiffs attempt to distinguish *Escott* by pointing out that the law firm was not a named defendant in that case. While the court agrees that the court's comments are *dicta,* it nevertheless is persuaded that the rendering of legal advice to an underwriter does not automatically "expertise" the Registration Statement. *See* Folk, III, *Civil Liabilities Under the Federal Securities Acts: The Barchris Case,* 55 Va.L. Rev. 1, 12, n. 54 (1969) ("Presumably, the theory is that it is sufficient to impose liability to purchasers upon the attorney's principal, either the issuer or underwriters. Of course, the attorney may be liable for professional malpractice, but this liability would probably run only to his client.")

The plaintiffs attempt to skirt the problem by arguing that the defendant acted as a control person under Section 15 of the 1933 Act and is thus liable for violation of Section 11. The court first notes that the complaint nowhere asserts this theory of liability. Even reading the complaint, as written, as broadly as possible the theory fails. At most, the plaintiffs have asserted that the defendants *substantially assisted* the underwriters. (Complaint, ¶ 41.) This stands the notion of control on its head. *Hagert v. Glickman, Lurie, Eiger & Co.,* 520 F.Supp. 1028, 1035 (D.Minn.1981).

Plaintiffs' allegations that defendant can be held liable under an aiding and abetting theory under Section 11 also must fail. It is true that over a decade ago this court, in light of the scarcity of authority on point, was constrained to find that charges of aiding and abetting under Section 11 stated a cause of action. *In re Caesars Palace Securities Litigation,* 360 F.Supp. 366 (S.D.N.Y.1973). Since then, however, the Supreme Court has adopted a narrow construction of Section 11 in *Huddleston, supra.* Although it did not direct its attention to aiding and abetting liability, by recognizing that the section fails to reach a number of persons primarily involved in the registration process, the court implicitly indicated that expansive liability under Section 11 is inappropriate.

Other lower courts have refused to recognize certain aiding and abetting liability under Section 11. *See In re Equity Funding Corp. of America Securities Litigation,* 416 F.Supp. 161, 181 (C.D.Cal.1976) ("This court is of the opinion that where a statute specifically limits those who may be held liable for the conduct described by the statute, the courts cannot extend liability, under a theory of aiding and abetting, to those who do not fall within the categories of potential defendants described by the statute.") *See also Hagert v. Glickman, Lurie, Eiger & Co.,* 520 F.Supp. at 1034.

This court, following what appears to be the law in the Eighth Circuit and after observing development of securities regula-

tion narrowing the scope of liability in several areas, is constrained to dismiss the aiding and abetting theory of liability under Section 11. Such liability, however, may remain viable in other sections of the securities laws which do not expressly limit the class of potential defendants.

### SECTION 10(b) OF THE 1934 ACT

Count III of the plaintiffs' complaint asserts both primary and secondary liability under Section 10(b) of the 1934 Exchange Act and Rule 10b–5 promulgated thereunder. That section provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. 15 U.S.C. § 78j(b).

Rule 10b–5 provides:

It shall be unlawful or any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.106–5.

The defendant argues that the allegations in Count III are insufficient as a matter of law with respect to both primary and secondary liability. Regarding primary liability, defendant argues that plaintiffs do not allege that Reavis engaged in any fraudulent conduct, that Reavis owed any duty to plaintiffs, or that plaintiffs relied upon any of FTC's offering documents. With regard to secondary liability, Reavis contends that the complaint is flawed as a matter of law for failure to allege that Reavis rendered substantial assistance to a primary violation of Section 10(b). Both arguments fail.

■ Succinctly stated Section 10(b) is a source of primary liability if plaintiffs show misstatements or omissions of material fact by defendant in connection with plaintiffs' purchases or sales of securities as well as demonstrate that defendant acted with scienter. In their complaint, the plaintiffs have alleged fraudulent conduct of the defendant by stating:

Commencing when it first rendered legal advice to Laidlaw, Reavis knowingly or in reckless disregard of the facts, directly and indirectly, and aiding and abetting the other Principal Actors, engaged in an unlawful combination, conspiracy, and course of conduct pursuant to which Reavis and the other Principal Actors made various untrue statements of material fact and omitted to state other material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading to plaintiffs and members of the Class.... (Complaint, ¶ 52.)

The plaintiffs further assert:

The purpose and effect of the acts, misrepresentations and omissions alleged herein, all of which were part and parcel of a common scheme and conspiracy to defraud, was to cause members of the Class to purchase securities of FTC and to make such purchases for grossly excessive consideration during the Class Period.... (Complaint, ¶ 53.)

■ Although defendant contends that plaintiffs have failed to assert a duty owed the plaintiffs by the defendant, the Supreme Court has defined the duty as "aris[ing] from the relationship between the parties ... and not merely from one's

ability to acquire information because of his position in the market." *Chiarella v. United States*, 445 U.S. 222, 231–232, n. 14, 100 S.Ct. 1108, 1116, n. 14, 63 L.Ed.2d 348. *See also Dirks v. SEC*, 463 U.S. 646, 103 S.Ct. 3255, 3263, 77 L.Ed.2d 911 (1983). The allegations set out in plaintiffs' complaint have satisfied this requirement. The defendant was not some stranger in the market. Rather, according to the allegations, it undertook the preparation of allegedly fraudulent and misleading Prospectuses. The duty has been fairly asserted by the complaint to withstand a motion to dismiss.

The defendant next argues that the plaintiffs have failed to allege that they relied upon the documents and, under *Vervaecke v. Chiles, Heider & Co.*, 578 F.2d 713 (8th Cir.1978), this failure makes Count III deficient. The Eighth Circuit has attempted to clarify the element of reliance[3] in a Rule 10b–5 cause of action in *Vervaecke.* In that case the court announced a rule distinguishing between reliance in a nondisclosure case and reliance in a material misrepresentation case. In the former type of case, the circuit court found the holding in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), eliminating the requirement of proof of reliance and substituting a presumption of causation in fact, to be appropriate; in the latter, the Eighth Circuit adopted a rule in which the presumption of reliance was not allowed. It therefore may be necessary, at some point, to determine whether this case sounds primarily in material misrepresentation or nondisclosure. However, if at a later stage the plaintiffs are able to demonstrate that their losses were in fact caused by the alleged fraud of Reavis, the question is moot.

■ The court finds the pleadings sufficient to set out a Section 10(b) claim for primary liability. Accepting the allegations as true, the elements for such a cause of action have been properly stated.

■ Finally, the defendant argues that, assuming that secondary liability exists under Section 10(b),[4] the plaintiffs have failed to properly allege it. Reavis contends that plaintiffs must allege that defendant had a " 'conscious and specific motivation' for failing to discover and disclose FTC's fraud or that it received [a] specific benefit from its supposed complicity." [Memorandum in Support of Reavis & McGrath's Motion to Dismiss, page 21.] The three-part test that must be met for the imposition of aiding and abetting liability under Section 10(b) have been set out as:

(1) the existence of a securities law violation by the primary party (as opposed to the aiding and abetting party);

(2) "knowledge" of the violation on the part of the aider and abettor; and

(3) "substantial assistance" by the aider and abettor in the achievement of the primary violation. *Stokes v. Lokken*, 644 F.2d 779, 782–783 (8th Cir.1981); *see also ITT, An International Investment Trust v. Cornfeld*, 619 F.2d 909, 922 (2d Cir.1980); *Monsen v. Consolidated Dressed Beef Co.*, 579 F.2d 793, 799 (3d Cir.), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978).

While the court is not in disagreement with the defendant's contention that such proof will ultimately be required, there is great doubt that at this stage dismissal is warranted. The complaint asserts all of those elements is ¶¶ 41, 48, 52[5] of the complaint.

## COMMON LAW FRAUD

■ The defendant seeks dismissal of Count IV, common law fraud, for failing to allege: (1) acts constituting fraud; (2) that Reavis owed any duty to the plaintiffs; (3)

---

**3.** Materiality or reliance are the elements used in discussing the dispositive issue of causation in fact in a Rule 10b–5 case. *St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 562 F.2d 1040, 1048 (8th Cir.1977), *cert. denied*, 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978).

**4.** Defendant maintains that aiding and abetting liability does not exist under Section 10(b).

**5.** The court recognizes that ¶¶ 41 and 48 come within the Section 11 allegations which are being dismissed. However, because these paragraphs describe the activity and level of assistance allegedly engaged in by the defendant, they

that plaintiffs relied on any of the offering documents issued by FTC. The acts constituting fraud have been set out in the discussion of the Section 10(b) claim and need not be reiterated. The discussion of plaintiffs' reliance has also been sufficiently dealt with earlier in this opinion.

Regarding the plaintiffs' failure to allege a duty, the defendant notably does not deny that it had a duty.[6] It simply seeks to have this court impose the old form of strict pleading, contrary to the liberality established by Rule 8 of the Federal Rules of Civil Procedure.[7] This the court will not do.

## MINNESOTA BLUE SKY LAW

■■■■■ In Count V the plaintiffs allege violations of the Minnesota blue sky laws under both Sections 80A.01 [8] and 80A.03.[9] Defendant concedes that Section 80A.01 re-

quires the same elements as SEC Rule 10b–5. The court agrees. *See Austin v. B.J. Loftsgaarden,* 675 F.2d 168, 176, n. 15 (8th Cir.1982), *Appelbaum v. Ceres Land Co.,* 546 F.Supp. 17, 19 (D.Minn.1981). Inasmuch as the court finds the 10b–5 cause of action to be properly pleaded, we must deny the motion to dismiss the Section 80A.01 claim.

The Section 80A.03 claim, however, is more troublesome. It is defendant's argument that the section is virtually identical to Section 9 of the Exchange Act, 15 U.S.C. § 78i, which prohibits the use of manipulating security prices by conduct artifically affecting market activity. Section 9(a)(1)–(3) of the Exchange Act provides:

(a) It shall be unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of

are being considered in light of the entire complaint.

**6.** A Rule 10b–5 violation tracks common law fraud both of which require: "(i) the existence of a relationship affording access to inside information intended to be available only for a corporate purpose, and (ii) the unfairness of allowing a corporate insider to take advantage of that information by trading without disclosure." *Chiarella v. United States,* 445 U.S. 222, 227, 100 S.Ct. 1108, 1114, 63 L.Ed.2d 348 (1980). A duty to disclose "arises from the existence of *a* fiduciary relationship." *Dirks v. SEC,* 463 U.S. 646, 103 S.Ct. 3255, 3261, 77 L.Ed.2d 911 (1983) (emphasis supplied).

**7.** The court recognizes the tension between Rules 8 and 9 of the Fed.R.Civ.P. However, in this part of the defendant's motion to dismiss, the attack goes to the form of pleading rather than the sufficiency of the facts.

**8.** Minn.Stat. § 80A.01 provides: It is unlawful for any persons, in connection with the offer, sale or purchase of any security, directly or indirectly:

(a) to employ any device, scheme, or artifice to defraud;

(b) to make any untrue statement of a material fact or to omit to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(c) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

**9.** Minn.Stat. § 80A.03 provides:

It is unlawful for any person to effect any transaction in, or to induce the purpose or sale of any security by means of any manipulative, deceptive or other fraudulent device or contrivance, including any fictitious quotation. The terms "manipulative, deceptive, or other fraudulent device or contrivance" shall include, but shall not be limited to, the following practices: (a) effecting any transaction in a security which involves no change in the beneficial ownership thereof, or entering any order or orders for the purchase or sale of any security with the knowledge that an order or orders of substantially the same size, at substantially the same time, and at substantially the same price, for the sale or purchase of the security, have been or will be entered by or for the same or affiliated persons, for the purpose of creating a false or misleading appearance of active trading in the security or a false or misleading appearance with respect to the market for the security;

(b) effecting, alone or with one or more other persons, a series of transactions in any security creating actual or apparent active trading in the security or raising or depressing the price of the security, for the purpose of inducing the purchase or sale of the security by others; or

(c) inducing the purchase or sale of any security by the circulation or dissemination of information to the effect that the price of the security will or is likely to rise or fall because of market operations of any one or more persons conducted for the purpose of raising or depressing the price of the security, if he is selling or offering to sell or purchase or offering to purchase the security or is receiving a consideration, directly or indirectly, from any such person.

any national securities exchange, or for any member of a national securities exchange—

(1) For the purpose of creating a false or misleading appearance of active trading in any security registered on a national securities exchange, or a false or misleading appearance with respect to the market for any such security, (A) to effect any transaction in such security which involves no change in the beneficial ownership thereof, or (B) to enter an order or orders for the purchase of such security with the knowledge that an order or orders of substantially the same size, at substantially the same time and at substantially the same price, for the sale of any such security, has been or will be entered by or for the same or different parties, or (C) to enter any order or orders for the sale of any such security with the knowledge that an order or orders of substantially the same size, at substantially the same time, and at substantially the same price, for the purchase of such security, has been or will be entered by or for the same or different parties.

(2) To effect, alone or with one or more other persons, a series of transactions in any security registered on a national securities exchange creating actual or apparent active trading in such security or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others.

(3) If a dealer or broker, or other person selling or offering for sale or purchasing or offering to purchase the security, to induce the purchase or sale of any security registered on a national securities exchange by the circulation or dissemination in the ordinary course of business of information to the effect that the price of any security will or is likely to rise or fall because of market operations of any one or more persons conducted for the purpose of raising or depressing the prices of such security.

15 U.S.C. § 78i.

The conduct prohibited by the Minnesota statute clearly is "manipulation," similar to the proscribed conduct under federal law. Although ruling in a 10b–5 case, the Supreme Court had occasion to discuss the significance of the use of the word "manipulation" when used in connection with securities markets. In *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 476, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977), the court stated that "the term refers to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity."

■ This is not the type of activity charged in the complaint. Plaintiffs maintains that Section 80A.03 more closely resembles a Section 10(b) action under federal law. Not only does it make little sense for the Minnesota legislature to have enacted both Section 80A.01 and 80A.03 to proscribe the same activity, but the operative language of 80A.03 appears to this court to be the prohibition of manipulative types of activities. The court concludes that the plaintiffs have failed to allege a claim under Section 80A.03 of the Minnesota blue sky law and will dismiss the claim under that section.

## PLEADING WITH PARTICULARITY

■ The defendant seeks dismissal of Counts III, IV and V because, according to defendant, they fail to allege fraud with sufficient particularity. To satisfy Rule 9(b) of the Federal Rules of Civil Procedure, which requires that in averments of fraud, the circumstances be stated with particularity, "conclusory allegations that defendant's conduct was fraudulent and deceptive are not enough." *Decker v. Massey-Ferguson, Inc.,* 681 F.2d 111, 114 (2d Cir.1982) (citing *Segal v. Gordon,* 467 F.2d 602, 607 (2d Cir.1972)). All that is required is that plaintiffs set forth the "time, place and circumstances of the alleged fraudulent activities." *Hagert v. Glickman, Lurie, Eiger & Co.,* 520 F.Supp. at 1036 (citing *Helfant v. Louisiana & Southern Life Ins. Co.,* 82 F.R.D. 53, 57 (E.D.N.Y.1979)).

■ The complaint details each of the required elements and passes muster under

Rule 9. *See* Complaint ¶¶ 31, 32, 34, 35. The defendant has been given sufficient notice of the claim made against it insofar as the complaint sets forth the specific alleged omissions and/or misrepresentations, Complaint ¶¶ 31(a)–(n), 34(a)–(n); it alleges the documents in which the alleged fraud occurred, Complaint ¶¶ 30, 31, 45, 55; and it alleges the circumstances of the alleged fraud, Complaint ¶¶ 24–28. Dismissal is not warranted on the basis of Rule 9.

### AMENDED ORDER

The motion of the defendant Reavis & McGrath to dismiss plaintiffs' complaint is GRANTED in part.

It is hereby ORDERED that Counts I and II are DISMISSED. Count V is dismissed insofar as it alleges violations of Minn.Stat. § 80A.03.

IT IS SO ORDERED.