Paul ANSPACH, Plaintiff,

v.

BESTLINE PRODUCTS, INC., et al., Defendants.

No. C-73-1282 RFP.

United States District Court, N. D. California.

July 19, 1974.

Strauss, Neibauer & Lacy, Modesto, Cal., for plaintiff.

Berliner, Cohen & Flaherty, San Jose, Cal., for defendant.

Humphreys, Berger & Pitto, San Jose, Cal., for defendant Wm. E. Bailey.

## MEMORANDUM AND ORDER

PECKHAM, District Judge.

Plaintiff brings this securities fraud action against defendants for alleged violations of Securities Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated under Section 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). Specifically, plaintiff charges that defendants made certain misrepresentations of material facts in order to induce plaintiff to enter into two overlapping franchise agreements which licensed plaintiff (as franchisee) to manufacture and sell certain products which were originally developed and marketed by defendants (the franchisor). Plaintiff seeks restitution in the sum of $43,000 and consequential damages in the sum of $200,000.

Plaintiff seeks to invoke this court's jurisdiction pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa.

Defendant William Bailey now moves for an order dismissing the action on the ground that this court lacks subject matter jurisdiction and on the ground that the complaint fails to state a claim upon which relief can be granted. Defendant argues that the complaint (1) does not allege facts concerning the purchase or sale of a "security" as defined by the Securities Exchange Act of 1934; (2) does not allege facts revealing an interstate nexus as required by Section 10 and Rule 10b–5; and (3) does not allege facts concerning fraudulent conduct with sufficient particularity.

### FACTS

This court, in considering the motion to dismiss, accepts the allegations of plaintiff's complaint as true and resolves any ambiguities in favor of the validity of the pleading. Gardner v. Toilet Goods Association, 387 U.S. 167, 172, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967); Walling v. Beverly Enterprises, 476 F.2d 393, 396 (9th Cir. 1973); Gillibeau v. City of Richmond, 417 F.2d 426, 430 (9th Cir. 1969). The allegations of the complaint present two separate causes of action, and each cause of action is based on a specific contractual arrangement between plaintiff and defendants.

### 1. FIRST CAUSE OF ACTION

Plaintiff alleges that, on or about January 15, 1970 in San Jose, California, he entered into an agreement with Bestline Products, Inc. which granted him the Bestline Products franchise for Mexico. The agreement, incorporated by reference into the complaint, required the company to supply formulas for certain household cleaning products and to provide technical assistance concerning the construction and operation of a plant for the products' manufacture. The agreement required plaintiff, as consideration for the company's efforts, to pay a fee of $50,000 and a royalty of 2 per cent of the wholesale sales prices on all sales. Other provisions of the agreement outline the working arrangement anticipat-

ed by the parties. One provision opaquely notes,

> The said licensing is for the manufacture of the licensed products in the Republic of Mexico by Anspach and/or a corporation to be formed by him known and designated as Bestline de Mexico S.A. de C.V. In this connection, the marketing shall include not only the formulas but, in addition, the marketing plan currently used or which may be used by Bestline Products, Inc.

The agreement does not disclose the details of the "marketing plan."

Plaintiff alleges that defendants engaged in several misrepresentations with respect to this agreement. He claims that defendants did not intend to supply him with information concerning "formulas [which] would be workable in the country of Mexico" or data concerning the manufacture of products. Additionally, he claims that he

> . . . was informed that it was necessary to use defendants' multi-level marketing program or pyramid scheme in the enterprise in Mexico in an effort to derive profits from the operation . . .

He argues that defendants, in fact, did not intend to assist him in the marketing of the products.

The first cause of action, which views the franchise agreement as an investment contract, construes defendants' statements as misrepresentations of material facts which induced plaintiff to sign the contract.

## 2. SECOND CAUSE OF ACTION

Plaintiff alleges that, on or about March 5, 1969 in San Jose, California, he entered into a comprehensive agreement with Bestline International. This agreement, also incorporated by reference into the complaint, provides the details of the business relationship expected by and of the parties. The company grants plaintiff "an exclusive license in Mexico, to remanufacture, bottle and distribute the Licensed Product," gives him "a non-exclusive license to use and to sell throughout the world the Licensed Product," and states that plaintiff will receive all technical information necessary for "remanufacture of the bottled product." The company also promises to produce any information concerning future improvements in products and to transfer certain manufacturing equipment and some manufactured product to plaintiff. Apparently, plaintiff was required to make certain "payments" as consideration for the franchise, but the copy of the agreement attached to the complaint is missing the page which evidently describes his obligations.[1]

Plaintiff alleges that defendants induced him to enter this agreement through their promises that they would furnish "proper" formulas "for use in the country of Mexico and . . . for the purpose of remanufacturing products," that they "would recommend the most efficient plant layout, would furnish a representative to supervise and installation of and assist in the start of the business operations and plant in the country of Mexico." Plaintiff repeats his allegation that he

> . . . was informed that it was necessary to use defendants' multi-level marketing program or pyramid scheme in the enterprise in Mexico in an effort to derive profits from the operation . . .

Plaintiff alleges that defendants did not intend to fulfill their promises, that they did not plan to take the actions necessary to give his franchise some chance for success.

The second cause of action parallels the first cause of action. It labels the franchise agreement an investment contract, and it sees defendants' statements as misrepresentations of material facts which induced plaintiff to agree to the contract.

---

1. Defendant's memorandum in support of his motion to dismiss states that neither defendant nor plaintiff have a copy of the missing page.

**1086**

## DISCUSSION

### 1. Security

As his first argument for dismissal, defendant contends that plaintiff did not purchase "securities" when he signed the two agreements, and, therefore, plaintiff cannot bring himself within the protection of the federal securities laws.

██ This court begins its analysis with the proposition that the Securities Exchange Act of 1934 constitutes a significant piece of remedial legislation. See, *e.g.*, Tcherepnin v. Knight, 389 U.S. 332, 337, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). See generally Report of the Senate Committee on Banking and Currency, S. Rep. No. 47, 73rd Cong., 1st Sess. 1 (1933). Congress designed the Act to promote the full and fair disclosure of information concerning securities so that the public would be protected from the fraudulent schemes of securities salesmen. See, *e.g.*, Affiliated Ute Citizens v. United States, 406 U.S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); SEC v. Capital Gains Research Bureau, 375 U.S. 180, 186, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963). This court, applying familiar canons of legislative construction, must construe the Act's provisions liberally so that Congress' intent is not defeated. Tcherepnin v. Knight, *supra*, 389 U.S. at 337, 88 S.Ct. 548; SEC v. Glenn W. Turner Ent., Inc., 474 F.2d 476, 480–481 (9th Cir. 1973). The court must note that the Act's definition of a security "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." SEC v. W. J. Howey Co., 328 U.S. 293, 299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1945). "[I]n searching for the meaning and scope of the word 'security' in the Act, form should be disregarded for substance and the emphasis should be on economic reality." Tcherepnin v. Knight, *supra*, 389 U.S. at 336, 88 S.Ct. at 553.

Section 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10), defines "security" as

> . . . any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing . . .

Plaintiff, in his complaint, characterizes the two franchise agreements as investment contracts and, in his papers in opposition to defendant's motion, suggests that the agreements also represent certificates of interest or participation in a profit sharing agreement.

Two frequently cited Supreme Court decisions provide a basic framework for evaluating whether financial arrangements equal securities. SEC v. Joiner Leasing Corp., 320 U.S. 344, 352–353, 64 S.Ct. 120, 124, 88 L.Ed. 88 (1943), holds that courts, in determining whether an agreement equals an investment contract, must look beyond the label which the parties have attached to their dealings; "[t]he test rather is what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect." SEC v. Howey, *supra*, 328 U.S. at 298–299, 66 S.Ct. at 1103, elaborates on this approach: an investment contract is "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." The definition reflects the facts of both cases. The purchasers of the investment contracts in

both cases had little, or no, experience with the enterprises in which they invested, and they relied upon the expertise of the promotors who remained in control of the business operations. Thus, in *Joiner,* the purchasers bought assignments of oil leases on lands which the promoters would, albeit indirectly, explore; in *Howey,* the purchasers invested in citrus groves and voluntarily signed maintenance contracts for the groves with the citrus company promoter. The two-part definition—investment in a common enterprise and reliance on third party efforts for profits—reflects the completely passive involvement of the purchasers of the investment contracts in the activities described in the two decisions.

Two recent Ninth Circuit decisions apply this definition to franchise activities and, in the process, elaborate on the reach of the Act's definition of an investment contract as a security. One decision, SEC v. Glenn W. Turner Ent., Inc., 474 F.2d 476 (9th Cir. 1973), reveals that this circuit believes that a slight modification of the *Howey* definition is necessary to effectuate the Act's broad remedial purposes. The other decision, Sam Bitter v. Hoby's International, Inc., 498 F.2d 183 (9th Cir. 1974), indicates that the circuit does not intend to extend the definition to allow plaintiffs' invocation of Rule 10b–5 in all cases involving franchise operations.

In Glenn W. Turner Ent., Inc., Judges Duniway, Hufstedler, and Trask reviewed a district court order which granted the S.E.C. a preliminary injunction against certain Glenn W. Turner Enterprises, Inc. selling activities. Basically, the company, through use of a subsidiary called "Dare To Be Great," sold individuals various self-improvement courses. The company allowed the purchasers of some of the more expensive courses to participate in the selling of the courses to new customers. These purchasers-turned-sellers did not sell the courses to others solely by their own efforts, but rather enticed the new customers to attend sales meetings run by the company. For their limited efforts, they received a percentage of the new sales made by the company. In effect, the company created a pyramid of individuals who attempted to recapture their initial investment and to earn quick profits by attracting new individuals to the self-improvement course game. Theoretically, the company and the purchasers would grow richer and richer until no new customers for the courses could be found. The parties relied on the courses' promise of easy profits.

The decision, authored by Judge Duniway, recognizes that *Howey* holds that an investment contract equals a security only if profits were to come "solely" from the efforts of others. This qualification, if followed literally, would prevent application of the federal securities laws to the Dare To Be Great scheme, since the purchasers of the courses did have to lead others into the Dare To Be Great tent in order to profit from the company's selling efforts. The decision reasons that, "in light of the remedial nature of the legislation," the word "solely" should "not be read as a strict or literal limitation on the definition of an investment contract, but rather must be construed realistically, so as to include within the definition those schemes which involve in substance, if not form, securities." *Id.* at 482. The court, in approving the issuance of an injunction under the federal securities laws, adopted a modified version of the traditional test:

> . . . whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise.

*Id.* at 482.

In *Hoby's International, Inc.,* Judges Barnes, Choy, and Schwartz applied the *Glenn W. Turner Ent., Inc.* definition in reviewing a district court's granting of summary judgment in a securities case involving the sale of restaurant franchises. Hoby's International, Inc. advertized and sold hot roast beef restaurant

franchises to private individuals. The company retained significant control over the standards of operation, including the standards for food materials and employee service. However, the franchisee was responsible for the day to day management of his own restaurant.

The court distinguished *Glenn W. Turner Ent., Inc.*, in which financial success depended "primarily on the selling efforts of the Turner employees . . . not on the slight efforts of the investors," from *Hoby's International, Inc.*, in which a franchisee's success depended on his own substantial efforts rather than "the success of the franchise system." *Id.* at page 185. The court, emphasizing that each Hoby's franchise constituted "a relatively independent economic entity," held that the district court properly ruled that the sale of a franchise did not equal, in the eyes of the federal securities acts, the sale of an investment contract (and, therefore of a security). *Id.* at page 185.

Federal courts in other circuits have reached similar results in cases factually similar to *Glenn W. Turner Ent., Inc.* and *Hoby's International, Inc.* The courts flexibly apply the *Joiner* and *Howey* definition of a security. See, *e. g.*, Lino v. City Investing Co., 487 F.2d 689 (3rd Cir. 1973); Nash and Associates, Inc. v. Lum's of Ohio, Inc., 484 F.2d 392 (6th Cir. 1973); Wieboldt v. Metz, 355 F.Supp. 255 (S.D.N.Y.1973); Mr. Steak, Inc. v. River City Steak, Inc., 324 F.Supp. 640 (D.Colo.1970), aff'd 460 F.2d 666 (10th Cir. 1972).

Plaintiff's memorandum in opposition to defendant's motion to dismiss suggests that this court hold that the franchise agreements equal securities since plaintiff had to invest a substantial amount of risk capital in the franchisor in order to secure his franchise.

A California Supreme Court decision, often discussed in federal securities cases, articulates the theory which plaintiff asks this court to accept.

In Silver Hills Country Club v. Sobieski, 55 Cal.2d 811, 13 Cal.Rptr. 186, 361 P.2d 906 (1961), the court liberalized the concept of security for purposes of California law through construction of a "risk capital" test for a case involving a novel selling scheme. A country club financed improvements in its facilities through sales of memberships in the club. The members purchased no interest in the income or assets of the club, but could use its facilities once they were completed and could transfer their memberships, with permission of the club's board of directors, to third parties. In effect, the club solicited risk capital to begin its operations, and its members accepted the substantial risk that the venture would fail. The court held that the Silver Hills solicitation of memberships was equivalent to an offering of securities, given that investors could profit (that is, enjoy the use of the facilities or transfer their memberships for consideration) only if the country club succeeded as a continuing business.

Several federal courts have stated that use of the *Silver Hills* risk capital analysis might be appropriate in some instances involving the sale of franchises. See *e.g.*, Mr. Steak, Inc. v. River City Steak, Inc., 324 F.Supp. 640, 647 (D. Colo.1970), aff'd 460 F.2d 666 (10th Cir. 1972).

However, the Ninth Circuit, in Bitter v. Hoby's International, Inc., 498 F.2d 183 (9th Cir. 1974), dismissed use of the *Silver Hills* analysis in cases where the "franchise . . . is a relatively independent economic entity." At page 185. The decision's language implicitly suggests that the *Silver Hills* analysis might only be invoked by individuals whose financial success directly depended upon the efforts of the franchisor. In effect, the decision allows use of the *Silver Hills* analysis only in cases in which the franchisee would be able to make use of the *Glenn W. Turner Ent., Inc.* analysis of the security concept.

This court, in light of *Hoby's International, Inc.*, does not believe that *Silver Hills* provides a different basis than *Glenn W. Turner Ent., Inc.* for finding

that the franchise agreement equaled securities as defined by the Act.

This court, in the instant case, must determine whether plaintiff's allegations bring his claim within the reach of the *Glenn W. Turner Ent., Inc.* decision or whether the allegations simply describe a traditional franchise agreement as found in the *Hoby's International* decision.

Plaintiff argues that the *Bestline Products* plan approximated the Dare To Be Great pyramid scheme: a franchisee invests a substantial amount of capital in an investment arrangement, knowing that he will profit only if he, in turn, sells a similar investment package to others. Plaintiff's allegations provide scant support for his argument that this case parallels the *Glenn W. Turner Ent., Inc.* case. The complaint, as noted *supra*, does allege that defendants informed plaintiff that he would have to use a "multi-level marketing program or pyramid scheme." But, the complaint fails to spell out the details of defendants' representations. The agreements offer little evidence that the parties anticipated plaintiff's developing a multi-level or pyramid selling scheme of the type described in *Glenn W. Turner Ent., Inc.* However, the January 15, 1970 agreement's reference to a "marketing plan," quoted *supra*, may relate to something other than the usual marketing of products through use of franchises.

Defendant, in support of his motion, argues that the agreements formalize the sale of a franchise to a franchisee whose future profits mainly depend upon his own initiative. The agreements require the plaintiff to form his own corporation, to manufacture certain products, and to merchandize those products. The specific provisions of the March 5, 1969 agreement require plaintiff to, inter alia, remanufacture, bottle, and distribute not less than 100,000 fluid ounces of certain Bestline products each month upon pain of defendants' termination of the agreement. In fact, the agreements delegate far more responsibility to the franchise than did the franchise agreement in the *Hoby's International, Inc.* case.

This court, after review of plaintiff's allegations, concludes that it is more probable than not that the *Bestline Products* agreements anticipated a traditional franchise operation (such as in *Hoby's International, Inc.*) rather than a pyramid scheme (such as in *Glenn W. Turner Ent., Inc.*) in which investor profits would primarily flow from third party efforts. However, the granting of a motion to dismiss cannot be based upon mere probabilities. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). A "motion to dismiss is not to be granted except when it appears 'to a certainty' that plaintiff could prove no state of facts in support of his claim which would entitle him to relief." Bodine Produce, Inc. v. United Farm Workers Organizing Committee, 494 F.2d 541 (9th Cir. 1974), quoting J. Moore, 2A Federal Practice, § 8.13, p. 1706. "This rule . . . precludes final dismissal for insufficiency of the complaint except in the extraordinary case where the pleader makes allegations that show on the face of the complaint some insuperable bar to relief." C. Wright, Law of Federal Courts, 285–286 (2nd ed. 1970), cited with approval, Retana v. Apartment, Motel, Hotel and El. Op. Union Local No. 14, 453 F.2d 1018, 1022 (9th Cir. 1972).

Thus, this court cannot grant the motion to dismiss in the instant case. Plaintiff may be able to produce evidence in support of the complaint's allegations concerning the "multi-level marketing program or pyramid scheme" which would establish his right to relief under the federal securities laws. The evidence would have to establish that plaintiff's initial investment in the franchise system entitled him to participate in a scheme in which "the efforts made by those other than the investor are un-

deniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." SEC v. Glenn W. Turner Ent., Inc., *supra*, 474 F.2d at 482.

However, this court can grant the motion to dismiss and, at the same time, grant leave to amend. This approach recognizes that " 'mere vagueness or lack of detail is not ground for a motion to dismiss, but should be attacked by a motion for a more definite statement.' " Harman v. Valley National Bank of Arizona, 339 F.2d 564, 567 (9th Cir. 1964), quoting J. Moore, 2 Federal Practice, § 12.08, pp. 2245–2246. This exercise of discretion, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, would give plaintiff an opportunity to cure the undeniable vagueness of the complaint's allegations. *Cf.* Sackett v. Beaman, 399 F.2d 884 (9th Cir. 1968).

### 2. Interstate Nexus

As his second argument for dismissal, defendant contends that the complaint fails to allege facts which detail the necessary interstate nexus.

■ Section 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, require as a jurisdictional basis "the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange." A civil action, alleging a violation of the Act and its Rule, must allege with adequate specificity that an instrumentality of interstate commerce was used. *Cf.* Burke v. Triple A Machine Shop, Inc., 438 F.2d 978, 979 (9th Cir. 1971); Myzel v. Fields, 386 F.2d 718, 727 (8th Cir. 1967). The complaint, in the instant case, does not allege that an instrumentality of interstate commerce was used. This defect, if not cured, robs the court of jurisdiction and opens the complaint to a motion to dismiss.

■ Rule 15(a) of the Federal Rules of Civil Procedure reads in relevant part that "a party may amend his pleading only by leave of court . . . ; and leave shall be freely given when justice so requires." This court, in the exercise of its discretion, can grant plaintiff leave to amend his complaint to include allegations concerning use of instrumentalities of interstate commerce. *See* Zenith Radio Corp. v. Hazeltine Research, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); Sackett v. Beaman, *supra*, 399 F.2d at 889. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' " Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Plaintiff, in opposition to defendant's motion, contends that allegations of the necessary interstate nexus will be offered to amend the complaint if leave to amend is granted. At this stage of the proceedings, this court sees no reason why leave to amend should not be granted. *Cf.* Heyman v. Heyman, 356 F.Supp. 958, 968–69 (S.D.N.Y. 1973).

### 3. Particularity

As his final argument for dismissal, defendant argues that the complaint fails to meet the requirement of Rule 9(b) of the Federal Rules of Civil Procedure that, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with [sufficient] particularity." Defendant contends that the complaint fails to state which individual or individuals made each of the representations.

Rule 9(b)'s requirement of particularity does require more than mere conclusory allegations of fraud. Segal v. Gordon, 467 F.2d 602 (2nd Cir. 1972); Shemtob v. Shearson, Hammill and Co., 448 F.2d 442, 444 (2nd Cir. 1971). However, the rule "does not require nor

make legitimate the pleading of detailed evidentiary matter. J. Moore, 2A Federal Practice, § 9.30, p. 1930. Rather, it "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir. 1973).

Plaintiff's complaint appears to meet this standard of sufficiency. The complaint informs the defendants of the conduct which plaintiff believes fraudulent, giving defendants more than enough notice to prepare their defense. The complaint states "the time, place and nature of the alleged fraudulent activities." Walling v. Beverly Enterprises, *supra* at 397.

Also, it should be noted that the complaint predicates the plaintiff's right to relief on a claim with only loose connections to common law fraud actions. *Cf.* Affiliated Ute Citizens v. United States, 406 U.S. 128, 149–154, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Recent decisions indicate that securities actions based on Rule 10b–5 violations must meet Rule 9(b)'s particularity requirement, even though Rule 10b–5 does not incorporate all the elements of common law fraud. Segal v. Gordon, *supra*. However, courts appear to apply a loose standard in such actions, as long as the complaint gives the basic facts surrounding the alleged 10b–5 violation. *E.g.*, Walling v. Beverly Enterprises, *supra*.

Thus, plaintiff's complaint, insofar as it is considered to allege fraud, meets Rule 9(b) standards. However, discovery and trial of the issues clearly would be aided by plaintiff's delineation of which individual or individuals made each of the representations. *See* Bird v. Ferry, 51 F.R.D. 310 (D.C.Ga.1970).

## CONCLUSION

Plaintiff's complaint suffers from several deficiencies. First, with respect to the purchase or sale of a "security," its allegations extensively detail a franchise relationship within which the franchisee retained substantial control over his business—a description which does not place the franchise contract within the protection of the Securities Exchange Act of 1934—but provide few facts concerning an agreement for participation in a pyramid contract scheme—a transaction which might trigger the Act's protection. Second, with respect to the existence of an interstate nexus, the complaint's allegations fail to state that an instrumentality of interstate commerce was utilized. Third, with respect to the pleading of fraud, the complaint's allegations, even though sufficiently particular in description, do not associate specific individuals with specific representations.

These deficiencies, for the reasons stated *supra,* do not justify at this stage of the proceedings this court's granting defendant's motion to dismiss. But, they do indicate the need for amendment of the complaint.

Accordingly, defendant's motion to dismiss is granted, but plaintiff is granted sixty days leave to amend to fully particularize: facts concerning the franchise agreements which would make them securities in light of the Securities Exchange Act of 1934 as elucidated by SEC v. Glenn W. Turner Ent., Inc., 474 F.2d 476 (9th Cir. 1973); facts concerning the parties' use of an instrumentality of interstate commerce; and facts concerning the issue of which defendants made which representations.

So ordered.