Lois M. BADEN, Plaintiff,

v.

CRAIG–HALLUM, INC. and DeWayne Derksen, Defendants.

Civ. No. 4–86–565.

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 23, 1986.

Jack D. Elmquist, Elmquist & Sarff, Minneapolis, Minn., for plaintiff.

Terrence J. Fleming and Michael D. Olafson, Lindquist & Vennum, Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on the motion of defendant Craig-Hallum, Inc. to dismiss all counts of the complaint and for Rule 11 sanctions. Defendant's motion will be granted in part and denied in part.

## FACTS

Plaintiff Lois M. Baden is a resident of Minnetonka, Minnesota. Defendant Craig-Hallum, Inc. (Craig-Hallum) is a Minneapolis-based broker-dealer engaged in the sale of securities. Defendant DeWayne Derkson was at all times relevant to this litigation an employee, agent, and sales representative of Craig-Hallum operating out of Craig-Hallum's Edina, Minnesota office. This action arises under the Federal Securities Act of 1933 and the Securities Exchange Act of 1934. Plaintiff also brings various state law claims pursuant to the Court's pendent jurisdiction.

In 1982 plaintiff met defendant Derkson through a mutual friend. Derkson solicited plaintiff to open a Craig-Hallum account. Derkson allegedly represented to plaintiff that funds which she placed with Craig-Hallum would be invested in a low risk "house account," that the funds would not be used for speculative investments, that there would be no unnecessary trading and that no commissions would be charged. In reliance upon Derkson's representations plaintiff opened a Craig-Hallum account in the amount of $35,000. A Craig-Hallum account in plaintiff's name was opened August 2, 1982. Derkson was assigned the account.

Plaintiff alleges that from the outset Derkson traded securities on plaintiff's account negligently and with careless and reckless disregard for plaintiff's financial objectives. Plaintiff alleges that Derkson mishandled her account in the following respects:

(1) When plaintiff contacted Derkson with questions regarding her account, she was assured by him that her investments were without risk, that her funds had been invested in high-yield treasury bills, and that he had a good track record in securities trading. These representations were false and fraudulent, plaintiff alleges, in that Derkson consistently invested plaintiff's funds in highly speculative stocks, misrepresented the risk of these stocks, and ignored plaintiff's express instructions to limit investment to low-risk "blue chip" securities.

(2) For purposes of generating commissions and with the intent to defraud plaintiff Derkson engaged in a scheme of excessively trading in plaintiff's accounts.

(3) Without disclosure to plaintiff and without plaintiff's consent Derkson initiated margin trading in plaintiff's account.

(4) Derkson failed to diversify plaintiff's account, choosing to place virtually all her funds in the stock of highly speculative high-technology concerns listed on a local

over-the-counter market. Further, Derkson consistently purchased stock of these high-technology concerns only to sell the stock days later, usually at a significant loss. Plaintiff cites the following examples:[1]

| Stock | Shares Purchased | Date | PPS | Shares Sold | Date | PPS | (LOSS) |
|---|---|---|---|---|---|---|---|
| Dicomed | 200 | 5/12/83 | $19.00 | 200 | 5/24/83 | $18.00 | ($ 200) |
| Check Technology | 200 | 4/5/83 | $11.00 | 200 | 4/18/83 | $10.75 | ($ 50) |
| | 500 | 5/27/83 | $13.50 | 300 | 5/31/83 | $12.50 | ($ 300) |
| | | | | 200 | 6/7/83 | $12.65 | ($ 170) |
| Data Key | 1,000 | 1/31/84 | $ 9.00 | 900 | 2/9/84 | $ 6.25 | ($2,475) |

Exhibit A to Plaintiff's Proposed Amended Complaint.

(5) Derkson refused to respond to plaintiff's inquiries, continually instructed plaintiff to "trust him," and falsely represented that he was not deriving any commission or other gain from trading on plaintiff's account.

Plaintiff alleges that Craig-Hallum authorized, ratified, and approved Derkson's acts, and was negligent in employing Derkson. Plaintiff alleges that as a consequence of Derkson's wrongful conduct she lost virtually all of her original $35,000 investment. Plaintiff seeks to recover the value of her original investment, as well as punitive damages against each defendant in an amount exceeding $50,000.

Plaintiff's complaint is in eight counts. Counts I through III arise under sections 12(1), 12(2), and 17(a), respectively, of the Securities Act of 1933. Count IV arises under section 10(b) of the Securities and Exchange Act of 1934 and rules 10b–5 and 10b–16 promulgated thereunder. Plaintiff's remaining counts raise state law claims for common law fraud, conversion, breach of fiduciary duty, and contravention of state securities laws, and for violation of "applicable rules" of the New York Stock Exchange and National Association of Securities Dealers.

Defendant Craig-Hallum now brings this motion to dismiss all counts of plaintiff's complaint, and for Rule 11 sanctions.

## DISCUSSION

### A. Section 12(1) and 17(a) Claims

Plaintiff does not object to dismissal of counts I and III of her complaint. Count I arises under section 12(1) of the Securities Act of 1933, 15 U.S.C. § 77l(1). Section 12(1) provides a cause of action only for violation of the registration requirements of the 1933 Act. As plaintiff concedes, no registration improprieties are here alleged. Count III arises under section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a). Section 17(a) makes it unlawful for one to employ fraudulent or deceptive devices in connection with the sale of securities. *Shull v. Dain, Kalman & Quail, Inc.*, 561 F.2d 152, 155 (8th Cir.1977). However, it does not confer a private cause of action in favor of a person who purchases a security that has been sold to him in violation of the section. *Shull*, 561 F.2d at 155; *Nick v. Shearson/American Express, Inc.*, 612 F.Supp. 15, 18 (D.Minn.1984).

Counts I and III will be dismissed.

### B. Section 12(2) Claims

Plaintiff's count II arises under section 12(2) of the 1933 Act, 15 U.S.C. § 77l(2). Section 12(2) provides a private right of recovery against any person who offers or sells a security by the use of any means of interstate commerce by means of a prospectus or oral communication which includes an untrue statement of material fact or omits to state material facts. Section 13 of the Act, 15 U.S.C. § 77m, provides that

---

1. Which, if true, certainly lend credibility to plaintiff's claims.

no action shall be maintained under section 12(2) unless brought within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence. Defendant moves to dismiss plaintiff's count II on the ground that it is untimely. Defendant contends that the most recent statutory violation complained of by plaintiff occurred more than two years prior to filing of the complaint, and that plaintiff has failed to plead compliance with the timeliness rules of section 13 as required. *See, e.g., Nick*, 612 F.Supp. at 17–18 (D.Minn.1984); *Hagert v. Glickman, Lurie, Eiger & Co.*, 520 F.Supp. 1028, 1033 (D.Minn.1981).

In order to state a claim under section 12(2), plaintiff must affirmatively plead facts indicating the action has been timely brought. *Hagert*, 520 F.Supp. at 1033. Because compliance with the timeliness strictures of section 13 is an essential element of the rights created under section 12(2), compliance is a substantive rather than a procedural matter.[2] *Hagert*, 520 F.Supp. at 1033, *citing McMerty v. Burtness*, 72 F.R.D. 450, 453 (D.Minn.1976). The timeliness bar of section 13 has two aspects: plaintiff must plead and prove that she filed her action within one year of discovery of the alleged violation, and must also plead and prove that the filing occurred within three years of the date of sale of the securities. *LeCroy v. Dean Witter Reynolds, Inc.*, 585 F.Supp. 753, 758 (E.D.Ark.1984). The one- and three-year limitations periods are cumulative, and plaintiff's failure to plead and prove compliance with either will bar her cause of action.

In the case at bar, plaintiff has failed to plead compliance with either the one- or three-year limitations periods of section 13. Plaintiff has, however, submitted a proposed amended complaint which in some respects satisfies the pleading requirements of section 13. Accordingly, plaintiff will be granted leave to amend her complaint to affirmatively plead compliance with section 13 of the 1933 Securities Act. *See Hagert*, 520 F.Supp. at 1033.[3]

---

**2.** The general rule in the federal courts is that where the very statute which creates the cause of action also contains a limitation period, the statute of limitations not only bars the remedy, but also destroys the liability, and hence, plaintiff must *plead and prove* facts showing that he is within the statute. *Valles Salgado v. Piedmont Capitol Corp.*, 452 F.Supp. 853 (D.Puerto Rico 1978). The 1933 Act, section 12(2), is just such a statute.

Section 13 provides:

No action shall be maintained to enforce any liability created under section 77k or 77l(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77l(1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77l(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l(2) of this title more than three years after the sale.

15 U.S.C. § 77m.

**3.** In *Hagert* the Court dismissed the plaintiffs' section 12(2) claims on pleading grounds without prejudice and granted plaintiffs leave to amend the complaint to include the proper allegations. *See Hagert*, 520 F.Supp. at 1033; *Miller v. E.W. Smith Co.*, 581 F.Supp. 817 (E.D.Pa. 1983); *Weiss v. Gibson*, 610 F.Supp. 609, 611 (D.D.C.1985). Here, plaintiff has raised an allegation that defendants' fraudulent concealment of material facts prevented discovery of her right of action until sometime shortly before or after January 15, 1986. Plaintiff's complaint was filed less than one year following this discovery date. It is well accepted that where defendants' fraudulent concealment of material facts prevents a plaintiff from discovering the alleged violations, the one-year limitations period of section 13 does not commence until plaintiff has or in the exercise of due diligence should have discovered the violation. *Weiss*, 610 F.Supp. at 611 (D.D.C.1985); *Currie v. Cayman Resources Corp.*, 595 F.Supp. 1364, 1379 (N.D.Ga.1984).

Allegations of fraudulent concealment, however, even if properly made, cannot toll the running of the three-year period of limitations under this section. *Cowsar v. Regional Recreations, Inc.*, 65 F.R.D. 394 (M.D.La.1974). In her amended complaint plaintiff will be required to affirmatively plead compliance with the one- and three-year limitations periods of section 13.

## C. Rule 10b–16 Claims

Plaintiff's Count IV arises in part under Rule 10b–16, 17 C.F.R. § 240.10b–16, which was promulgated under section 10(b) of the Securities Exchange Act of 1934. Defendant moves for dismissal of plaintiff's Rule 10b–16 claim on two alternative grounds. First, defendant argues that no private cause of action exists under Rule 10b–16. Second, defendant contends that plaintiff has inadequately pled a Rule 10b–16 violation.

Rule 10b–16 provides in relevant part:

(a) It shall be unlawful for any broker or dealer to extend credit, directly or indirectly, to any customer in connection with any securities transaction unless such broker or dealer has established procedures to assure that each customer:

(1) Is given or sent at the time of opening an account, a written statement or statements disclosing (i) the conditions under which an interest charge will be imposed; (ii) the annual rate or rates of interest that can be imposed; (iii) the method of computing interest; (iv) if rates of interest are subject to change without prior notice, the specific conditions under which they can be changed; (v) the method of determining the debit balance or balances on which interest is to be charged and whether credit is to be given for credit balances in cash accounts; (vi) what other charges resulting from the extension of credit, if any, will be made and under what conditions; and (vii) the nature of any interest or lien retained by the broker or dealer in the security or other property held as collateral and the conditions under which additional collateral can be required.

17 C.F.R. § 240.10b–16.

The courts have split on the question of whether a private cause of action lies for violations of Rule 10b–16. *See* cases holding that private cause of action does lie:

*Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352 (11th Cir.1985); *Slomiak v. Bear Stearns & Co.,* 597 F.Supp. 676 (S.D.N.Y.1984); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534–39 (9th Cir.1984); *Liang v. Dean Witter & Co.,* 540 F.2d 1107, 1113 n. 25 (D.C.Cir.1976); *Abeles v. Oppenheimer & Co.,* 597 F.Supp. 532 (N.D.Ill.1983); and cases holding that private action does not lie: *Furer v. Pain Webber, Jackson & Curtis, Inc.,* CCH Fed. Sec.L.Rep. ¶ 98,701 (C.D.Cal.1982); *Establissement Tomis v. Shearson Hayden Stone Inc.,* 459 F.Supp. 1355 (S.D.N.Y. 1978). In *Robertson v. Dean Witter,* 749 F.2d at 536–39 (9th Cir.1984), the United States Court of Appeals for the Ninth Circuit held that a private cause of action *does* lie under Rule 10b–16 for the following reasons:

(a) a *strong presumption* arises that Rule 10b–16 provides the private right of action which exists generally for section 10(b);

(b) there is no indication that the Securities Exchange Commission intended to prohibit private actions under Rule 10b–16, and what evidence of the SEC's intentions that is available points to a contrary conclusion;

(c) Rule 10b–16 is reasonably related to the general anti-fraud purposes of section 10(b), in that Rule 10b–16 was designed as a consumer disclosure provision to *protect investors,* not as an internal brokerage regulation;

(d) Rule 10(b) is a catalogue of the kind of disclosures a customer might consider material with respect to his margin account, and information which rule 10b–16 requires that the broker divulge to customers is significant to a customer's investment decisions.

*See Robertson,* 749 F.2d at 534–39.[4]

In *Angelastro v. Prudential-Bache Securities, Inc.,* 764 F.2d 939 (3d Cir.1985),

---

**4.** The *Robertson* court stated that in determining whether a regulation gives rise to a private cause of action the two-part test of *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 679 (9th Cir. 1980) must be met. The *Jablon* test gives rise to a two-part inquiry: (1) whether Congress delegated authority to establish rules implying a private cause of action; and (2) whether the rule in question was drafted such that a private cause of action may legitimately be implied.

the United States Court of Appeals for the Third Circuit sided with the Ninth Circuit in finding that Rule 10b–16 actions are federally cognizable. The *Angelastro* court declared:

> We agree with the Ninth Circuit that failure to disclose the credit terms of a margin account can constitute a "manipulative or deceptive device or artifice" within the meaning of the statute. *See Robertson*, 749 F.2d at 538–39; *see also Liang*, 540 F.2d at 1113 n. 25; *Abeles v. Oppenheimer*, 597 F.Supp. at 536. The credit terms charged by a brokerage firm may be of substantial significance in an investor's decision whether to purchase securities either on margin or at all. Because the cost of margin payments, as well as the method of their calculation, may cause an investor to purchase more securities than he or she otherwise might buy and may also increase the risks of trading on margin, nondisclosure of such information might serve as a fraudulent or deceptive device on investors....
>
> ...:.. As with Rule 10b–5, allowing a private right of action under Rule 10b–16 will advance the statutory goals of promoting full disclosure of material information and of protecting investors from fraudulent practices.

*Angelastro*, 764 F.2d at 949. In *Haynes v. Anderson & Strudwick, Inc.*, 508 F.Supp. 1303, 1318–22 (E.D.Va.1981), the United States District Court for the Eastern District of Virginia in a well-reasoned opinion set forth several additional factors which support the conclusion that Rule 10b–16 creates an implied private cause of action:

(a) Rule 10b–16 was promulgated as an analogue of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and Congress created an express private cause of action for noncompliance with the requirements of that Act;

(b) Since the purposes underscoring Rule 10b–16 and the Truth in Lending Act are the same, *i.e.*, full disclosure of the terms and conditions of credit extension, it logically follows that private actions, lie under Rule 10b–16 as they do under the Truth in Lending Act;

(c) There is no indication that a cause of action under Rule 10b–16 would be one traditionally relegated to state law, and securities brokerage customers are in the class for whose benefit the regulation was promulgated, thus, under the test of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the implication of a private remedy is appropriate.

*See Haynes*, 508 F.Supp. at 1319–22.

Defendant places heavy reliance on two district court cases in which it was held that no private cause of action arises under Rule 10b–16, *Furer v. Paine Webber, Jackson & Curtis, Inc.*, CCH Fed.Sec.L.Rep. ¶ 98,701 (C.D.Cal.1982) and *Establissment Tomis v. Shearson Hayden Stone, Inc.*, 459 F.Supp. 1355 (S.D.N.Y.1980). Neither is persuasive. The *Furer* decision is in direct conflict with the subsequent decision of the Ninth Circuit in *Robertson.* The discussion in *Establissment Tomis* is extremely abbreviated, the court declaring that because plaintiff had cited no cases holding that a private action arises under Rule 10b–16, the court would not imply one. This abbreviated analysis warrants little consideration. Further, subsequent to *Establissment Tomis*, another judge of the Southern District of New York held that Rule 10b–16 does give rise to a private cause of action, without any citation to *Establissment Tomis* whatsoever. *Slomiak v. Bear Stearns & Co.*, 597 F.Supp. 676, 677–81 (S.D.N.Y.1984).

 While this is apparently a case of first impression in this circuit and district, on balance the Court finds that Rule 10b–16 does give rise to a private cause of action. All four circuit courts [5] which have

---

The first part of the *Jablon* test is met because it has long been accepted that section 10(b) confers a broad grant of authority on the SEC. *Robertson*, 749 F.2d at 536. The *Robertson* court held that the second prong of the *Jablon*

test had been met, based on the factors cited above.

**5.** In *Zerman v. Ball, Fomon, and E.F. Hutton & Co.*, 735 F.2d 15, 23 (2d Cir.1984) the Second

passed on the question have so stated, *see Robertson* (9th Cir.), *Angelastro* (3d Cir.), *Liang* (D.D.Cir.), *Greenblatt* (11th Cir.), and while the discussion in *Liang* and in *Greenblatt* is inarguably dictum, the opinions there expressed give at least some guidance as to how those courts may rule when the issue is placed squarely before them. Further, the factors relied upon by the *Robertson* and *Angelastro* courts are quite persuasive. The purpose of section 10(b) was to make unlawful a particular manipulative or deceptive device—the extension of credit with undisclosed terms and conditions. Rule 10b–16 directly advances that purpose by requiring full disclosure of credit terms and conditions before a broker or dealer may extend credit to any customer in connection with any securities transaction. Rule 10b–16 was designed as a customer disclosure provision to protect investors,[6] *Robertson*, 749 F.2d at 539, accordingly, the implication of a private remedy under the Rule is fully consonant with congressional and SEC purposes and directives. Therefore, the Court finds that Rule 10b–16 does give rise to a private cause of action. Defendant's motion to dismiss plaintiff's count IV will be denied.

■ In the alternative, defendant argues that plaintiff has inadequately pled a Rule 10b–16 cause of action, in that plaintiff has not alleged that she did not receive full credit disclosure at the time she opened her margin account or that the disclosure was materially misleading. Under the liberal notice pleading rules of the federal courts plaintiff's allegations of a Rule 10b–16 violation would appear to be adequate, albeit conclusory in nature. In the interest of fairness, plaintiff will be granted leave to amend her complaint to allege her Rule 10b–16 cause of action in greater detail.

## D. Rule 10b–5

Plaintiff's count IV also raises a claim under Rule 10b–5, which was promulgated pursuant to section 10(b) of the 1934 Act. Defendant moves to dismiss plaintiff's 10b–5 claim on the ground that plaintiff has failed to plead fraud with the requisite specificity.

■ Rule 9(b) of the Federal Rules of Civil Procedure requires plaintiff to state with particularity the circumstances giving rise to a 10b–5 claim. *See, e.g., Schaefer v. First National Bank of Lincolnwood*, 509 F.2d 1287, 1297 (7th Cir.1975). To comply with these requirements in the context of a securities fraud claim, the plaintiff must allege, at a minimum, the time, place, nature, and exact content of the alleged misrepresentations, along with a description of the full nature of the transaction involved. *Hokama v. E.F. Hutton & Co.*, 566 F.Supp. 636, 645–46 (C.D.Cal.1983); *Russo v. Bache Halsey Stuart Shields, Inc.*, 554 F.Supp. 613, 617 (N.D.Ill.1982).

■ Plaintiff's complaint fails to plead a 10b–5 cause of action with the requisite specificity. Count IV states: "The transactions described herein were in violation of Section 10(b) of the 1934 Act and Rules 10b–5 and 10b–6 promulgated thereunder." Complaint at 6. As plaintiff admits, these cursory allegations are simply not sufficient to raise a 10b–5 claim. The issue before the Court, therefore, is whether dismissal of plaintiff's count IV or leave to amend the complaint is the more appropriate course.

■ In *Hokama*, a case relied upon by the defendant, the court found that the plaintiff's pleadings were insufficiently specific to raise a 10b–5 claim. Rather than dismiss the claims outright, however,

---

Circuit expressly declined to consider the issue as unnecessary to the particular issues before it.

**6.** When it promulgated Rule 10b–16, the SEC announced its policy of disclosure as follows:
 The initial disclosure is designed to insure that the investor, before his account is opened, understands the terms and conditions under which credit charges will be made. This will enable him to compare the various credit terms available to him and to understand the methods used in computing the actual credit charges.
Securities Exchange Act Release No. 34–8773, 34 F.R. 19717 (1969).

the court dismissed the claims without prejudice and granted plaintiff leave to amend. *Hokama,* 566 F.Supp. at 646. Other courts have adopted a similar approach, particularly where plaintiff has submitted to the court some evidence that the 10b–5 claims have substance. *See Fischman v. Raytheon Mfg. Co.,* 188 F.2d 783 (2d Cir.1951); *Anspach v. Bestline Products, Inc.,* 382 F.Supp. 1083 (N.D.Cal.1974); *Young v. Seaboard Corp.,* 360 F.Supp. 490 (D.Utah 1973); *Holt v. Katy Industries, Inc.,* 71 F.R.D. 424 (S.D.N.Y.1976); *Index Fund, Inc. v. Hagopian,* 609 F.Supp. 499 (S.D.N.Y.1985). In the case at bar, plaintiff appears to have an at least colorable 10b–5 cause of action. Accordingly, plaintiff will be granted leave to amend her complaint to allege fraud with the requisite specificity.

### E. NYSE and NASD Claims

▬ Plaintiff's count VII alleges violations of "applicable rules" of the New York Stock Exchange (NYSE) and the National Association of Securities Dealers (NASD). The Ninth and Eleventh Circuits have held that the NYSE and NASD rules do not confer a private cause of action. *Thompson v. Smith Barney, Harris Upham & Co.,* 709 F.2d 1413, 1419 (11th Cir.1983); *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 679–81 (9th Cir.1980). In addition, three judges from the District of Minnesota have held that a private action does not lie for violations of NYSE and/or NASD rules. *See Corbey v. Grace,* 605 F.Supp. 247, 251–22 (D.Minn.1985) (Murphy, J.) (NASD rules); *Gustafson v. Strangis,* 572 F.Supp. 1154 (D.Minn.1983) (Alsop, J.) (NYSE and NASD); *Nelson v. Hench,* 428 F.Supp. 411, 420 (D.Minn.1977) (Larson, J.) (NASD and NYSE). Accordingly, plaintiff's count VII will be dismissed.[7]

### F. Rule 11

Defendant has also brought a motion for the imposition of Rule 11 sanctions. De-

fendant urges the following acts of plaintiff's counsel as a basis for the imposition of sanctions: plaintiff's counsel filed a complaint which was taken virtually verbatim from a sample complaint distributed at a continuing legal education (CLE) seminar; further, plaintiff's counsel filed the complaint without first ascertaining whether the causes of action alleged therein were or were not federally cognizable, or whether they had any relationship to the wrongs allegedly suffered by plaintiff.

▬ The courts have long had the inherent equitable power to award costs including attorneys' fees to a prevailing party where the unsuccessful litigant has been found to have "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (American rule). A second source of power to impose sanctions is found in the Federal Rules of Civil Procedure, Rule 11, which provides:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11. Rule 11 departs from prior law in imposing on the signatory the affirmative burden of ascertaining that the matters averred to are grounded in law or fact. The rule requires that the signatory certify "to the best of his knowledge, information, and belief *formed after reasonable inquiry"* that the document is "well

---

**7.** Defendant has also moved to dismiss plaintiff's state law claims, counts V, VI, and VIII, as without the pendent jurisdiction of the Court. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Because the Court has determined not to dismiss all of plaintiff's federal law claims, dismissal of plaintiff's state law counts under *Gibbs* is inappropriate.

grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11 (emphasis added); *see Young v. Internal Revenue Service*, 596 F.Supp. 141, 151 (N.D.Ind. 1984). Thus, Rule 11 states a more stringent standard than the good faith standard of *Alyeska Pipeline*. As stated by the United States Court of Appeals for the Second Circuit in *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir.1985):

> No longer is it enough for an attorney to claim that he acted in good faith, or that he personally was unaware of the groundless nature of an argument or claim. For the language of the new Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed. Simply put, subjective good faith no longer provides the safe harbor it once did.

 It is apparent at a glance that the complaint filed by plaintiff's counsel was taken virtually verbatim from a model complaint distributed at a CLE seminar. See Exhibit A in Support of Defendant's Motion to Dismiss. However, at least some of plaintiff's claims have facial validity and are federally cognizable, and while certain of plaintiff's counts were plead without any legal basis, *i.e.*, the section 12(1) claim (count I), the section 17(a) claim (count III), and the NYSE and NASD claims (count VII), on balance the Court finds that Rule 11 sanctions are unwarranted. Defendant's motion will be denied.

Based on the foregoing, and upon all the files, records, and proceedings in this matter,

IT IS ORDERED that:

1. defendant's motion to dismiss plaintiff's Counts I, III, and VII is granted;

2. defendant's motion to dismiss plaintiff's Count II is denied, and plaintiff is given ten days from the date of this order to amend Count II;

3. defendant's motion to dismiss plaintiff's Count IV is denied, and plaintiff is granted ten days from the date of this order to amend Count IV;

4. defendant's motion to dismiss is in all other respects denied;

5. defendant's motion for Rule 11 sanctions is denied.